*549
 
 RANDALL, Circuit Judge:
 

 In this appeal, we are asked to determine the effect of a bankruptcy court’s confirmation of a “wage earner plan,” under Chapter 13 of the Bankruptcy Code, on a creditor's statutory lien. The debtor instituted the instant adversary action in bankruptcy court, seeking cancellation of the lien notice filed of record by the creditor. The bankruptcy court refused to cancel the lien, holding in part that the lien continued to be valid after confirmation of the plan. The district court affirmed this holding. Because we hold that confirmation of the debtor’s Chapter 13 plan did not have the effect of lifting the creditor’s statutory lien, we affirm.
 

 Facts and Proceedings Below
 

 Benjamin P. Simmons contracted to have J.T. Saveli, a plumber, perform certain work on Simmons’ homestead. The work, which included the purchase and installation of plumbing fixtures, was begun on December 26, 1978, and completed on June 8, 1979, with the cost totalling $3,537.75.
 

 On May 1, 1980, Saveli filed a notice of construction lien with the Chancery Clerk of the First Judicial District of Hinds County, Mississippi, for the labor and materials furnished on the plumbing contract. Thereafter, on May 14, 1980, Saveli filed in state court a Declaration to Enforce Lien on Real Property (“declaration to enforce lien”) against Simmons, the Independent Life and Accident Insurance Company (ILA), and the Administrator of the Small Business Administration (SBA),
 
 [1]
 
 claiming a construction lien in the amount of $3,537.75, together with interest and attorney’s fees. The ILA filed an answer in the proceeding, but no further action has been taken in the suit.
 

 On June 9, 1980, Simmons filed a petition for relief in the United States Bankruptcy Court for the Southern District of Mississippi under Chapter 7 of the United States Bankruptcy Code (Code), 11 U.S.C. ch. 7. On July 30, 1980, Saveli filed a proof of claim identifying his claim as secured by a construction lien. Saveli appended exhibits to the proof of claim, including copies of the original invoice, the lien notice, and the declaration to enforce lien pending in state court. Simmons then petitioned for conversion of his case to one under Chapter 13 of the Code, 11 U.S.C. ch. 13. The bankruptcy court ordered such conversion on September 3, 1980. On September 29, 1980, Simmons filed a petition and plan under Chapter 13. The plan listed the debt to Saveli as unsecured but disputed, making reference to the state court action to enforce the lien. The plan proposed a deferred 10% cash payout to unsecured creditors. On November 18, 1980, Saveli again filed a proof of claim, which indicated that his claim was secured by a statutory lien and which again incorporated as exhibits copies of the invoice, the lien notice, and the declaration to enforce lien. Again the claim made specific reference to the state court action to enforce the lien. Paragraph 11 of the proof-of-claim form called for Saveli as claimant to indicate whether he accepted or rejected the plan.
 
 [2]
 
 Saveli placed an “X” in the box marked “Claimant accepts” but added the following typewritten statement: “Creditor objects to his claim being scheduled as unsecured.”
 

 The bankruptcy court, on May 26, 1981, entered an order confirming Simmons’ plan. The order recites that no objections to confirmation of the plan were considered and that no one other than the trustee and Simmons’ attorney appeared at the confirmation hearing. On July 28,1981, the trustee filed a motion to allow claims, which listed Saveli’s claim as unsecured and which provided that the listed claims would be deemed allowed for the purpose of distribution unless objection was made by a party in interest within thirty days. Saveli filed no objection to this motion. Saveli has received payments under the plan since confirmation, but Saveli insists that the checks have not been cashed.
 

 
 *550
 
 On April 19, 1982, Simmons filed a Motion for Authorization to Sell Real Property, namely, his homestead, which was approved by the trustee and apparently agreed to by all lienholders of record, including Saveli. The bankruptcy court entered the order authorizing the sale on April 26, 1982. The order provided,
 
 inter alia,
 
 that Simmons escrow the sum of $3,322.88 from the sale proceeds pending resolution of the status of Saveli’s purported construction lien. The property was sold, and the funds escrowed.
 

 On August 2, 1982, Simmons filed the instant adversary action in bankruptcy court, seeking an order that Saveli cancel the lien notice and an award of attorney’s fees for Saveli’s wilful failure to cancel the lien. Saveli answered and counterclaimed, seeking a judgment that his claim was secured, relief from the automatic stay to enforce his lien, and an award of attorney’s fees.
 

 After a hearing, on December 8, 1982, the bankruptcy court refused to cancel Sa-veli’s lien and further held that the lien, which was perfected before Simmons filed his original petition in bankruptcy, was valid and enforceable, could not be avoided, and entitled to full satisfaction. In an opinion filed on February 22, 1983, the bankruptcy court reasoned that statutory liens are recognized as secured claims against a debtor in bankruptcy so long as the lien is not subject to avoidance under 11 U.S.C. § 545. Section 545, the court continued, does not describe a situation when a lien “can be avoided because the debt is included in the plan and the creditor fails to object.” Further, the court rejected Simmons’ theories under 11 U.S.C. § 1327 that Saveli’s failure to object to the plan constituted a waiver of his rights under the lien or that confirmation of the plan had the effect of vesting the homestead in Simmons free and clear of the lien. Simmons appealed the decision to the United States District Court for the Southern District of Mississippi and applied for a stay of execution of the judgment pending appeal, which was granted on December 29, 1982.
 

 In a memorandum opinion and order dated October 9, 1984, the district court affirmed the bankruptcy court’s holding that Saveli’s construction lien remained valid after confirmation of the Chapter 13 plan. The district court, holding that a perfected construction lien is not enforceable under Mississippi law until judgment is entered pursuant to Miss.Code Ann. §§ 85-7-141 to -151, reversed the bankruptcy court’s determination that the lien was enforceable and remanded the case to the bankruptcy court for the purpose of itself adjudicating the issue of enforceability or directing the parties to proceed with the action pending in state court, the resolution of which would require the adjudication of this issue.
 

 Simmons appeals the decision of the district court regarding the validity of Saveli’s lien after the confirmation of Simmons’ Chapter 13 plan. The district court’s decision to remand the issue of enforceability to the bankruptcy court is not appealed by either party.
 

 On appeal, the parties continue to propound the same arguments that have carried them to this pass. Simmons contends that Saveli has waived his right to the lien recorded against Simmons’ homestead. Simmons emphasizes the central place of the wage earner plan in facilitating Congress’ purpose for Chapter 13 — viz., encouraging individual debtors to reorganize rather than liquidate by using future income to satisfy at least a portion of their outstanding obligations to creditors. Once Simmons’ plan was confirmed, Simmons continues, Saveli was bound by the terms of the plan, which listed Saveli’s claim as unsecured. After all, Saveli raised no objection to confirmation and had in fact “accepted” the plan although noting an objection to the classification of his claim as unsecured. Under section 1327, the order of confirmation vests all of the property of the estate in the debtor free and clear of any claim or interest of any creditor provided for by the plan. Construing the terms “claim or interest” to include a lien, Simmons concludes that the confirmation of his
 
 *551
 
 Chapter 13 plan effectively vested the homestead in him free of the lien. Further, because Saveli’s claim was allowed as an unsecured claim under Simmons’ plan and because 11 U.S.C. § 506(d) mandates that any lien securing such a claim is void, Simmons asserts that Saveli’s lien is a dead letter and that Saveli should be required to cancel it of record.
 

 Saveli responds with three arguments. First, Saveli maintains that the Code, particularly section 545, which governs the avoidance of statutory liens, does not authorize the avoidance of a statutory lien simply because the debtor listed the purported lienholder’s claim as unsecured and the lienholder did not object to confirmation of the plan. Second, Saveli asserts that his proof of secured claim should have been deemed allowed and treated by the plan as such because no objection to the proof of claim was ever filed by the debtor or any party in interest. Finally, notwithstanding Simmons’ assertion to the contrary, confirmation of the Chapter 13 plan cannot have the effect of lifting liens on property of the estate. The debtor could not be vested by the act of confirmation with any greater interest in the property of the estate — i.e., property unencumbered by a lien — than had been vested in the estate when the petition in bankruptcy was originally filed.
 

 Discussion
 

 An understanding of the codal structure for the allowance or disallowance of creditors’ claims is critical to a proper understanding and analysis of this case. Section 501(a) of the Code permits a creditor to file a proof of claim. Although the filing of a proof of claim may be a prerequisite to the allowance of certain claims, no creditor is required to file a proof of claim. H.R.Rep. No. 595, 95th Cong., 1st Sess. 351 (1977),
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 5963, 6307 [hereinafter cited as House Report]; S.Rep. No. 989, 95th Cong., 2d Sess. 61,
 
 reprinted in
 
 1978 U.S.Code Cong. & Ad.News 5787, 5847 [hereinafter cited as Senate Report]. A proof of claim should be filed only when some purpose would be served. 3 Collier on Bankruptcy ¶ 501.01, at 501-3 (15th ed. 1985). For example, “filing may prove necessary when the claim incorrectly appears in the debt- or’s schedules or when the schedules list the claim as disputed, contingent or unliqui-dated.”
 
 Id.
 
 The filing of a proof of claim might also be required by a request for a determination of the secured status of a claim under section 506 and allowance or disallowance under section 502. Otherwise, proof of a secured claim need not be filed. Bankr.R. 3002 advisory committee note (“A secured claim need not be filed or allowed under § 502 or § 506(d) unless a party in interest has requested a determination and allowance or disallowance under § 502.”). Under Bankruptcy Rule 3001, which delineates the basic essentials of a proof of claim, a proof of secured claim should be filed in writing, executed by the creditor or the creditor’s authorized agent, and should be accompanied by the writing on which the secured claim is based and by evidence that the security interest has been perfected. In a Chapter 13 case, the proof of claim should be filed with the clerk of the court in which the case is pending within ninety days after the first date set for a meeting of creditors. Bankr.R. 3002.
 

 The Code provides that “[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects.”
 
 [3]
 
 11 U.S.C. § 502(a). A proof of claim executed and filed in accordance with the Bankruptcy
 
 *552
 
 Rules constitutes prima facie evidence of the validity and amount of the claim.
 
 [4]
 
 Bankr.R. 3001(f).
 

 The procedure for objecting to a claim is established in part by Bankruptcy Rule 3007, which provides:
 

 An objection to the allowance of a claim shall be in writing and filed with the court. A copy of the objection with notice of the hearing thereon shall be mailed or otherwise delivered to the claimant, the debtor or debtor in possession and the trustee at least 30 days prior to the hearing. If an objection to a claim is joined with a demand for relief of the kind specified in Rule 7001, it becomes an adversary proceeding.
 

 The objection to a claim initiates a contested matter unless the objection is joined with a counterclaim asking for the kind of relief specified in Bankruptcy Rule 7001.
 
 [5]
 
 In addition to the requirements of Rule 9014, which governs contested matters, Rule 9004 specifies that the objection contain a proper caption designating it an objection to a proof of claim.
 
 [6]
 
 It has been said that the filing of a proof of claim is tantamount to the filing of a complaint in a civil action,
 
 see Nortex Trading Corp. v. Newfield,
 
 311 F.2d 163 (2d Cir.1962), and the trustee’s formal objection to the claim, the answer.
 
 See
 
 3 Collier on Bankruptcy ¶ 502.01, at 502-16. Upon the filing of an objection, the trustee must produce evidence tending to defeat the claim that is of a probative force equal to that of the creditor’s proof of claim.
 
 Id.
 
 at 502-17;
 
 see also In re Eastern Fire Protection, Inc.,
 
 44 B.R. 140 (Bankr.E.D.Pa.1984).
 

 In the case
 
 sub judice,
 
 neither the trustee nor Simmons filed an objection to Saveli’s proof of secured claim before confirmation. Simmons’ Chapter 13 plan, which listed Saveli’s claim as unsecured but disputed, cannot be deemed to constitute such an objection. The purpose of filing an objection is to join issue in a contested matter, thereby placing the parties on notice that litigation is required to resolve an actual dispute between the parties.
 
 See
 
 Bankr.R. 9014 advisory committee note. An objection to a proof of claim filed in accordance with Rules 3007, 9004, and 9014 clearly places in issue the allowance or disallowance of that claim as filed. The parties are put on notice that the objection will have to be resolved before a final determination is made as to the allowance or disallowance of the claim. In contrast, the filing of a Chapter 13 plan does not initiate a contested matter. When a plan is filed with the petition, as permitted under Rule 3015, it is unlikely at that time that creditors have even contemplated filing proofs of claims. When the creditor files a proof of claim subsequent to the filing of the plan, the Code and the Rules clearly impose the burden of placing the claim in dispute on any party in interest desiring to do so by means of filing an objection.
 

 In the case at bar, Saveli’s proof of claim, although filed after Simmons peti
 
 *553
 
 tioned for relief under Chapter 7, was of record when the ease was converted to one under Chapter 13 and when Simmons thereafter filed his Chapter 13 petition and plan. Regardless, given the differences in purpose and effect of filing a plan and lodging an objection, Simmons’ filing of the plan did not clearly place the claim in issue. The plan is like a proof of claim to which objections are filed, thereby instituting contested matters, rather than a vehicle through which objections are made. There is no statement in the plan that it was intended as an objection to Saveli’s proof of claim. Moreover, there is no indication in the record that the plan was served with a notice of hearing on an objection purportedly asserted by the plan to a previously filed proof of claim, as is required by Rule 3007. The Code and the Rules do not envision the use of a plan as a means for objecting to proofs of claims. Consequently, we hold that Simmons’ plan did not constitute an objection to Saveli’s proof of secured claim.
 

 Rule 3007 establishes no time limit for objecting to the allowance of a claim. Nevertheless, section 502(b) provides that, in the absence of an objection by a party in interest, a proof of claim is deemed allowed. We must determine then when a secured claim, proof of which has been timely filed in a Chapter 13 case, must be allowed.
 

 This issue was presented to the court in
 
 In re Hartford,
 
 7 B.R. 914 (Bankr.D.Me.1981). In that case, after the claimant filed a proof of secured claim and no party in interest objected to the claim, the debtors’ Chapter 13 plan, which listed a claimant as a “long term claimant,” was confirmed. The claimant moved for reconsideration of the confirmation order, seeking to have its claim allowed as secured rather than to be listed as a “long term claimant.” In resolving the issue as to when a proof of secured claim must be deemed allowed, the court made reference to two sections of the Code applicable to Chapter 13 cases both of which clearly require a determination of a claim’s status before confirmation of a Chapter 13 plan.
 

 In particular, the court reasoned that “[sjection 506(a), made applicable to Chapter 13 cases by section 103(a), requires, as to
 
 each allowed secured claim,
 
 a valuation of the creditor’s security in conjunction with a hearing on confirmation of the Chapter 13 plan.”
 
 [7]
 

 Id.
 
 at 916 (emphasis in original). Further, section 1325(a)(5) requires as one of the six prerequisites to confirmation of a Chapter 13 plan that:
 

 with respect to each
 
 allowed secured claim
 
 provided for by the plan—
 

 (A) the holder of such claim has accepted the plan;
 

 (B) (i) the plan provides that the holder of such claim retain the lien securing such claim; and
 

 (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
 

 (C) the debtor surrenders the property securing such claims to such holder....
 

 11 U.S.C. § 1325(a)(5) (emphasis added). Hence, under sections 506(a) and 1325(a)(5), a proof of secured claim must be acted upon — that is, allowed or disallowed — before confirmation of the plan or the claim must be deemed allowed for purposes of the plan.
 
 See
 
 11 U.S.C. § 502(a). We find this reasoning of the court in
 
 In re Hartford
 
 persuasive.
 

 
 *554
 
 In addition, section 1325(a)(4) requires that, 'before a wage earner plan shall be confirmed, the court must determine that the value of the property to be distributed in settlement of each allowed unsecured claim is not less than the amount that would be paid if the estate of the debtor were liquidated under Chapter 7. A determination of the liquidation value under this section is facilitated by resolving before confirmation whether the claims shall be allowed or disallowed as filed.
 
 Cf.
 
 5 Collier on Bankruptcy ¶ 1325.01[D][b][iv], at 1325-24.
 

 Hence, because no objection was filed before confirmation of Simmons’ Chapter 13 plan, Saveli’s claim should have been deemed an allowed secured claim for purposes of !confirmation.
 

 A bankruptcy court is required to confirm a proposed wage earner plan if the plan satisfies the six requirements set out in section 1325. 11 U.S.C. § 1325(a);
 
 see
 
 House Report,
 
 supra,
 
 at 430; Senate Report,
 
 supra,
 
 at 142. Section 1325(a)(5), excerpted above, essentially provides that, before a plan can be confirmed: (1) all secured creditors must accept the plan; (2) the plan must provide that a secured creditor who does not accept the plan retain his lien
 
 and
 
 that the value, as of the effective date of the plan, of property to be distributed under the plan is hot less than the allowed amount of the claim;
 
 [8]
 
 or (3) the plan must provide for the debtor to surrender the property securing a claim to the secured creditor who does not accept the plan. Unless one of these three circumstances exists, a proposed plan should not be confirmed.
 

 At the outset, it is probably true that confirmation of Simmons’ Chapter 13 plan was improper because it did not provide for Saveli’s claim as an allowed secured claim, but instead listed it as unsecured. Regardless, in the case at bar, none of the three circumstances described in section 1325(a)(5) can be said to exist. First, although Simmons alleges that Saveli accepted the proposed wage earner plan as evidenced by the “X” he typed in the box denominated “Claimant accepts,” his appending the typewritten objection to the scheduling of his claim as unsecured is tantamount to a rejection of the plan. Certainly a creditor’s avowed acceptance of all portions of a wage earner plan, except the plan’s treatment of his own claim, to which he expressly objects, cannot constitute an acceptance of the plan for purposes of section 1325(a)(5)(A).
 
 [9]
 
 Second, Simmons’ plan made no provision that Saveli retain the lien on Simmons’ homestead. Simmons' argument on appeal that confirmation of the plan had the effect of dissolving the lien on the homestead contravenes any assertion under section 1325(a)(5)(B) that the plan provided for retention of the lien. Finally, the plan expressly states that Simmons did not propose to surrender any property to the holder of secured claims.
 

 Therefore, because the requisites of section 1325(a)(5) were not satisfied with regard to Simmons’ proposed Chapter 13 plan, it was erroneously confirmed. Nevertheless, the order confirming Simmons’ plan is not before us in this appeal. We are called upon, however, to determine what effect the confirmation of the plan may have had on Saveli’s lien. It is to this issue that we now direct our attention.
 

 Section 1327 describes the effect of confirmation:
 

 (a) The provisions of a confirmed plan bind the debtor'and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or
 
 *555
 
 not such creditor has objected to, has accepted, or has rejected the plan.
 

 (b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.
 

 (c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.
 

 11 U.S.C. § 1327.
 

 Simmons contends that under section 1327(a) all creditors, including Saveli, are bound as to all issues actually decided by the order of confirmation as well as all issues that could have been decided at the hearing on confirmation, citing
 
 In re Lewis,
 
 8 B.R. 132 (Bankr.D.Idaho 1981). Simmons urges that one of the effects of Saveli’s being bound by the confirmed Chapter 13 plan, which treats Saveli’s claim as unsecured, is a lifting of the lien from the homestead. In particular, Simmons relies upon the language of subsections 1327(b) and (c), which provide that the order of confirmation vests all of the property of the estate in the debtor free and clear of any “claim or interest” of any creditor unless otherwise provided in the plan or order of confirmation. Hence, Simmons concludes, upon confirmation, the homestead passed to Simmons free and clear of the lien. We do not agree.
 

 In facing this precise contention in
 
 In re Honaker,
 
 4 B.R. 415 (Bankr.E.D.Mich.1980), the court noted that section 1327 relates only to property of the estate as defined in sections 541 and 1306(a). Said the court:
 

 By Section 541(a)(1) the estate was vested with the same interest in the collateral that the debtor had, that is, an interest subject to a valid security interest. There has been no action in this case to void or set aside the lien securing the Bank’s claim. Then, by operation of Section 1327(b), that same interest is shifted again, this time from the estate back to the debtor. The question arises whether, by virtue of Section 1327(c), the debtor receives a greater interest than the estate had, in that the property is no longer subject to any liens. The language of Section 1327(c) is “free and clear of any
 
 claim or interest"
 
 “Claim” is defined in the Code at Section 101(4). A “claim” is distinct from a “lien,” which is defined in Section 101(28). The term “interest” is nowhere defined in the Code, but it would be odd if Congress had chosen that undefined term to mean “lien,” when they could have used the defined term “lien” and avoided uncertainty.
 

 4 B.R. at 416-17.
 
 [10]
 
 After delineating the parameters of the dispute over the meaning of the terms “claim or interest,” and having observed that the legislative history of section 1327(c) offers no insight regarding this issue, a leading commentator writes that “[mjatters are further confused by the fact that there appears to be no sound reason for lifting liens by operation of law at confirmation under chapter 13.” 5 Collier on Bankruptcy ¶ 1327.01[3], at 1327-5. Nor are we able to discern any reason for such an effect. Therefore, we agree with the
 
 In re Honaker
 
 court’s conclusion that “[t]he reading of Section 1327 urged by [the debtor] would have the Debt- or materially improve his financial position, by unencumbering [secured] assets, through the simple expedient of passing his property through the estate. This result has little to recommend it.1’ 4 B.R. at 417;
 
 see also In re Levine,
 
 45 B.R. 333 (N.D.Ill.1984) (bank’s lien on Chapter 13 debtor’s automobile remained intact, entitling bank to proceeds of vehicle’s sale, although bank failed to file timely proof of claim against debtor’s automobile, and notwithstanding confirmation of Chapter 13 plan);
 
 In re Rhoades,
 
 34 B.R. 168, 170 (Bankr.D.Vt.1983).
 

 Such a result would fare no better under the particular facts of the case at bar. It would be anomalous indeed were
 
 *556
 
 we to permit Simmons a windfall for his mischaracterization of Saveli’s claim in the plan as unsecured.
 
 Cf. Whiteford Plastics Co. v. Chase National Bank,
 
 179 F.2d 582 (2d Cir.1950). It is clear that Saveli’s claim should have been deemed an allowed secured claim at the time of confirmation and treated as such in the plan if the plan was to be confirmed. That did not happen. It is also apparent that Saveli should have objected to confirmation, and, had his objection not been sustained, he should have appealed the order of confirmation. But that also did not happen. Nevertheless, Saveli’s failure to interpose an objection to the plan or to appeal the confirmation order should not now be permitted to justify avoidance of a lien securing a claim that was originally deemed an allowed secured claim as a result of Simmons’ failure to object to Saveli’s timely filed proof of secured claim.
 

 Only recently has, the Seventh Circuit through Judge Posner recalled the long line of cases allowing “a creditor with a loan secured by a lien on the assets of a debtor who becomes bankrupt before the loan is repaid to ignore the bankruptcy proceeding and look to the lien for satisfaction of the debt.”
 
 In re Tarnow,
 
 749 F.2d 464, 465 (7th Cir.1984).
 
 [11]
 
 Entirely consistent with this view is the oft-repeated observation that “[a] secured claim need not be filed or allowed under § 502 or § 506(d) unless a party in interest has requested a determination and allowance or disallowance under § 502.” Bankr.R. 3002 advisory committee note;
 
 see
 
 1 Norton Bankruptcy Law and Practice § 28.27, at 28-18 (1985).
 
 [12]
 
 In
 
 In re Tarnow,
 
 the court faced the issue whether the late filing of a claim secured by a lien on the crops and equipment of the debtor extinguished the lien. The creditor did not appeal the bankruptcy court’s disallowance of the claim as untimely. Refusing to accept the notion that the rejection of a claim automatically abrogates the lien, the court held that the lien had not been invalidated because no party requested the court to determine the validity of the lien. 749 F.2d at 466.
 

 It is clear under the Code that any statutory lien that is valid under state law remains valid through bankruptcy unless invalidated by some provision of the Code. Section 545 delineates those circumstances in which a trustee may avoid a statutory lien.
 
 [13]
 
 Simmons contends that,
 
 *557
 
 because Saveli has never established his lien pursuant to Mississippi law, there was no lien for the trustee or Simmons to avoid under section 545. Simmons seems to argue that Saveli has not taken the proper steps to establish and enforce the lien and that this failure now permits Simmons to avoid the lien. Saveli responds that his lien was properly perfected under Mississippi law. The bankruptcy court and the district court held that Saveli perfected his lien, by filing a notice of construction lien, before Simmons petitioned for relief in bankruptcy. We agree. Section 85-7-131 of the Mississippi Code provides that the construction lien created by that section takes effect from the time of commencing suit to enforce the lien
 
 or
 
 from the time notice of the contract, or the contract itself, under which the lien arose is filed in the office of the clerk of the chancery court. Miss.Code Ann. § 85-7-131. Hence, by filing notice of the construction lien with the chancery clerk, Simmons perfected his lien. That the issue of enforceability remains to be decided upon remand does not negate the fact that Saveli's lien was perfected in accordance with state law. Thus, having failed to bring an avoidance action under section 545 to avoid Saveli’s properly perfected lien on his homestead, Simmons, without a shred of authority, now asks us to add to the provisions of section 545 a means of avoidance for a situation involving a lienholder who fails to object to the confirmation of a wage earner plan incorrectly listing his claim as unsecured. We decline the invitation as inappropriate and unsupported.
 

 Simmons asserts that Saveli’s lien is void under section 506(d) of the Code. At the time the instant action was filed, section 506(d) read:
 

 To the extent that a lien secures a claim against the debtor that is
 
 not an allowed secured claim,
 
 such lien is void, unless—
 

 (1) a party in interest has not requested that the court determine and allow or disallow such claim under section 502 of this title; or
 

 (2) such claim was disallowed only under section 502(e) of this title.
 

 11 U.S.C. § 506(d) (1982) (emphasis added).
 
 [14]
 
 Simmons argues that Saveli’s claim is an allowed unsecured claim, not an allowed secured claim, and is void under section 506(d). The legislative history of this provision states that “[s]ubsection (d) permits liens to pass through the bankruptcy case unaffected. However, if a party in interest requests the court to determine and allow or disallow the claim secured by the lien under section 502 and the claim is not allowed, then the lien is void....” House Report,
 
 supra,
 
 at 357;
 
 cf.
 
 Senate Report,
 
 supra,
 
 at 68.
 
 [15]
 
 We previously observed that Saveli’s claim was deemed to be an allowed secured claim pursuant to section 502(a). Consequently, Saveli’s lien is not void under the express provisions of section 506(d).
 

 Simmons contends, however, that, under section 1327(a), he and each creditor, including Saveli, are bound by the terms of the confirmed Chapter 13 plan, which provided for Saveli’s claim as unsecured. He relies on
 
 In re Lewis,
 
 8 B.R. 132 (Bankr.D.
 
 *558
 
 Idaho 1981), which held that under section 1327(a) an order of confirmation was res judicata as to all justiciable issues decided or which could have been decided at the hearing on confirmation, including the issues of adequate protection, equity in the property, and the necessity of the property for an effective reorganization of the debt- or’s affairs. A leading authority has said that “[ajbsent timely appeal, the confirmed plan is res judicata and its terms are not subject to collateral attack.” 5 Collier on Bankruptcy ¶ 1327.01, at 1327-2 (citing
 
 In re Flick,
 
 14 B.R. 912 (Bankr.E.D.Pa.1981)). The court in
 
 In re Flick
 
 held,
 
 inter alia,
 
 that confirmation of a plan providing for payment of a claim precluded the creditor from seeking relief from the stay to enforce the claim outside the plan absent some subsequent aggravating circumstances.
 
 See also In re Gregory,
 
 705 F.2d 1118, 1121 (9th Cir.1983);
 
 In re Abercrombie,
 
 39 B.R. 178 (Bankr.N.D.Ga.1984). We do not take issue with these authorities. Instead, we examine the essential elements of a Chapter 13 plan along with the requirements of section 506(d). The Senate Report states that “Chapter 13 is designed to serve as a flexible vehicle for the repayment of part or all of the allowed claims of the debtor.” Senate Report,
 
 supra,
 
 at 141. The plan must provide for the submission of all or a portion of future earnings or other future income to the trustee to the extent that it is necessary for the execution of the plan; the plan must provide for full payment of all claims entitled to priority under section 507 of the Code; and, if claims are classified, the plan must accord each claim within a particular class the same treatment. 11 U.S.C. § 1322(a). In addition, section 1322(b)(10) provides that the Chapter 13 plan may “include any other appropriate provision not inconsistent with this title.”
 
 [16]
 
 Under section 506(d), when a party in interest has not requested that the court determine and allow or disallow a claim under section 502, a lien cannot be void.
 
 See
 
 Hagedorn,
 
 The Survival and Enforcement of the Secured Claim Under the Bankruptcy Reform Act of 1978,
 
 54 Am.Bankr.L.J. 1, 27 (1980). In the case at bar, to allow Simmons’ plan to effect an avoidance of Saveli’s lien would be inconsistent with section 506(d). The court in
 
 In re Spadel,
 
 28 B.R. 537 (Bankr.E.D.Pa.1983), responding to the debtors’ contention that a third mortgagee was bound by the terms of a confirmed plan proposing to avoid the mortgage lien on the debtors’ residence, held that the third mortgagee’s lien passed through the debtors’ bankruptcy proceeding unaffected pursuant to section 506(d). Said the court:
 

 As to the debtors[’] contention that [the third mortgagee’s] lien is avoided because the confirmed plan provided that said lien was to be avoided, we find it dispositive that [the third mortgagee’s] lien is expressly wwavoidable by virtue of section 506(d)(1). Section 1322(b)(10) provides that a plan under chapter 13 may “include any other appropriate provision not inconsistent with this title.” ... In the case
 
 sub judice,
 
 the provision in the debtors’ plan proposing to avoid [the third mortgagee’s] lien is plainly inconsistent with section 506(d)(1) of the Code. Therefore, we conclude that [the third mortgagee’s] lien passes through the debtors’ bankruptcy proceeding unaffected.
 

 28 B.R. at 540 (citations and footnotes omitted) (emphasis in original). The factual posture of the case at bar, involving no express provision of a Chapter 13 plan proposing to avoid the lien, presents an even more compelling case for upholding the clear congressional intent to permit liens to pass through a bankruptcy case unaffected.
 

 The Seventh Circuit’s discussion of section 506(d) in
 
 In re Tarnow
 
 is instructive. The court read section 506(d) as providing that the bankruptcy court will determine the validity of a lien only when a party in interest seeks such a determination and
 
 *559
 
 allowance or disallowance of the claim. 749 F.2d at 466;
 
 see In re Rhoades,
 
 34 B.R. 168, 170 (Bankr.D.Vt.1983). Because no party sought a determination of the status of the claim, the bankruptcy court did not rule on the validity of the lien. The bankruptcy court’s disallowance of the claim, because the claim had been filed too late, did not , amount to a finding that the lien was invalid. Nor did it extinguish the lien. The court looked to section 506(d)’s legislative history for support, explaining that:
 

 the Senate version of section 506(d) had provided “that to the extent a secured claim is not allowed, its lien is void unless the holder had neither actual notice nor knowledge of the ease. . . .” S.Rep. No. 598,
 
 supra,
 
 at 68. This could have been read to mean that the lien would be extinguished whatever the basis for disallowing the claim. But Congress enacted the House version,
 
 see
 
 124 Cong.Rec. 33997 (1978), which is less hospitable to such a reading.
 

 Id.
 
 at 466-67. Further, the Seventh Circuit found that Congress’ recent amendment of section 506(d)
 
 [17]
 
 could only be viewed as codifying,
 
 or recodifying,
 
 the long-established rule of the
 
 Long v. Bullard
 
 line of cases that a secured creditor need not participate in a bankruptcy proceeding to preserve his lien.
 
 [18]
 

 Id.
 
 at 467.
 

 To hold that confirmation of Simmons’ repayment plan had the effect of dissolving Saveli’s statutory lien because the validity of his secured claim could have been decided at the confirmation hearing, had a party in interest requested the court to do so, would require us to ignore the rule of
 
 Long v. Bullard
 
 and to read section 506(d) out of the Code.
 
 [19]
 
 This we will not do. Therefore, having reviewed the essential elements of a Chapter 13 plan in the light of Code provisions concerning the effect of confirmation, particularly sections 1327 and 506, and persuaded that giving sway to Congress’ intent that liens pass through bankruptcy unaffected does not frustrate Chapter 13’s fresh start policy, we hold that Saveli’s statutory lien on Simmons’ homestead remained unimpaired by the order of confirmation.
 
 See In re Willey,
 
 24 B.R. 369, 371 (Bankr.E.D.Mich.1982) (secured creditor retains lien against collateral even when its claim is treated as unsecured under a confirmed Chapter 13 plan).
 

 For the foregoing reasons, the judgment of the district court is affirmed.
 

 AFFIRMED.
 

 [1]
 

 . The ILA and SBA each held a security interest in Simmons’ homestead.
 

 [2]
 

 . The form utilized by Saveli was entitled "Proof of Claim; Acceptance or Rejection of Plan.”
 

 [3]
 

 . For a discussion of who is considered to be a "party in interest” within the meaning of § 502(a) for the purpose of objecting to a proof of claim in a Chapter 13 case, see 5 Collier on Bankruptcy ¶ 1300.71[1], at 1300-138 to -139 ("Of course, the debtor and the chapter 13 trustee are parties in interest entitled to interpose objection to a proof of claim.”).
 
 See
 
 House Report,
 
 supra,
 
 at 352;
 
 In re Dooley,
 
 41 B.R. 31 (Bankr.N.D.Ga.1984) (Chapter 13 debtor is a party in interest for purpose of objecting to proof of claim);
 
 In re Roberts,
 
 20 B.R. 914 (Bankr.E.D.N.Y.1982) (same);
 
 cf. In re Rhoten,
 
 44 B.R. 741 (Bankr.M.D.Tenn.1984). In the instant case, neither the debtor, Simmons, nor the trustee raised an objection to Saveli's proof of secured claim before confirmation of Simmons’ repayment plan.
 

 [4]
 

 . See House Report,
 
 supra,
 
 at 352; Senate Report,
 
 supra,
 
 at 62; 3 Collier on Bankruptcy ¶ 502.01, at 502-6 to -7.
 

 [5]
 

 . If the objection is joined with such a counterclaim, it becomes an adversary proceeding under Rule 3007 and is governed by the procedures set out in Part VII of the Bankruptcy Rules. Rule 7001 defines an “adversary proceeding" as:
 

 [A] proceeding in a bankruptcy court (1) to recover money or property, except a proceeding under § 725 of the Code, Rule 2017, or Rule 6002, (2) to determine the validity, priority, or extent of a lien or other interest in property, other than a proceeding under Rule 4003(d), (3) to obtain approval pursuant to § 363(h) for the sale of both the interest of the estate and of a co-owner in property, (4) to object to or revoke a discharge, (5) to revoke an order of confirmation of a chapter 11 or chapter 13 plan, (6) to determine the dischargeability of a debt, (7) to obtain an injunction or other equitable relief, (8) to subordinate any allowed claim or interest, except when subordination is provided in a chapter 9, 11, or 13 plan, (9) to obtain a declaratory judgment relating to any of the foregoing, or (10) to determine a claim or cause of action removed to a bankruptcy court.
 

 [6]
 

 .Because Rule 9004 is merely a formal requirement, a failure to satisfy its requisites "does not ordinarily result in the loss of rights," Bankr.R. 9004 advisory committee note, unless an order to correct the error would affect substantial rights.
 
 See
 
 Bankr.R. 9005.
 

 [7]
 

 . Section 506(a), which defines the limits of a claim’s secured status, provides:
 

 An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate’s interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor’s interest or the amount so subject to setoff is less than the amount of such allowed claim.
 
 Such value shall be determined
 
 in light of the purpose of the valuation and of the proposed disposition or use of such property, and
 
 in conjunction with any hearing
 
 on such disposition or use or
 
 on a plan affecting such creditor’s interest.
 

 (Emphasis added).
 

 [8]
 

 . Other property may be conveyed to the secured creditor, in lieu of further payments, to meet the § 1325(a)(5)(B)(ii) standard. Because this alternative permits modification of a secured creditor’s rights without his consent, it is often called the cram down approach to confirmation. B. Weintraub & A. Resnick, Bankruptcy Law Manual ¶ 9.14[5] (1980 & Supp.1984).
 

 [9]
 

 . We note in passing that Simmons’ insistence that it matters whether Saveli accepted or rejected the plan reveals that, at least for purposes of voting on the Chapter 13 plan, Simmons considered Saveli to be a secured creditor because ■“only secured creditors may be requested to vote on a plan” in a Chapter 13 case. Bankr.R. 3018 advisory committee note.
 

 [10]
 

 . The term "lien” is now defined in the Code at § 101(31).
 

 [11]
 

 . Citing
 
 Long v. Bullard,
 
 117 U.S. 617, 620-21, 6 S.Ct. 917, 918, 29 L.Ed. 1004 (1886);
 
 Louisville Joint Stock Land Bank v. Radford,
 
 295 U.S. 555, 582-83, 55 S.Ct. 854, 859-860, 79 L.Ed. 1593 (1935);
 
 United States Nat'l Bank v. Chase Nat'l Bank,
 
 331 U.S. 28, 33, 67 S.Ct. 1041, 1044, 91 L.Ed. 1320 (1947) (dictum);
 
 In re Woodmar Realty Co.,
 
 307 F.2d 591, 594-95 (7th Cir.1962);
 
 Dizard & Getty, Inc. v. Wiley,
 
 324 F.2d 77, 79-80 (9th Cir.1963);
 
 Clem v. Johnson,
 
 185 F.2d 1011, 1012-14 (8th Cir.1950),
 
 cert. denied
 
 341 U.S. 909, 71 S.Ct. 622, 95 L.Ed. 1346 (1951);
 
 DeLaney v. City & County of Denver,
 
 185 F.2d 246, 251 (10th Cir.1950);
 
 In re Bain,
 
 527 F.2d 681, 685-86 (6th Cir.1975);
 
 In re Honaker,
 
 4 B.R. 415, 416 & n. 3 (Bankr.E.D.Mich.1980);
 
 cf. In re Rebuelta,
 
 27 B.R. 137, 138-39 (Bankr.N.D.Ga.1983);
 
 In re Hines,
 
 20 B.R. 44, 48 (Bankr.S.D.Ohio 1982).
 
 See also In re Levine,
 
 45 B.R. 333, 337 (N.D.Ill.1984);
 
 In re Evanston Motor Co.,
 
 26 B.R. 998, 1002 (N.D.Ill.1983).
 

 [12]
 

 .
 
 See, e.g., In re Weathers,
 
 15 B.R. 945 (Bankr.D.Kan.1981);
 
 In re Sillani,
 
 9 B.R. 188 (Bankr.M.D.Fla.1981);
 
 In re Honaker,
 
 4 B.R. 415 (Bankr.E.D.Mich.1980);
 
 In re Robertson,
 
 4 B.R. 213 (Bankr.D.Colo.1980).
 
 But see In re Williams, 9
 
 B.R. 228 (Bankr.D.Kan.1981) (claim not filed is disallowed);
 
 In re Francis,
 
 15 B.R. 998 (Bankr.E.D.N.Y.1981) (same).
 

 [13]
 

 . Section 545 provides;
 

 The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—
 

 (1) first becomes effective against the debt- or—
 

 (A) when a case under this title concerning the debtor is commenced;
 

 (B) when an insolvency proceeding other than under this title concerning the debtor is commenced;
 

 (C) when a custodian is appointed or authorized to take possession;
 

 (D) when the debtor becomes insolvent;
 

 (E) when the debtor’s financial condition fails to meet a specified standard; or
 

 (F) at the time of an execution against property of the debtor levied at the instance of an entity other than the holder of such statutory lien;
 

 (2) is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such
 
 *557
 
 property at the time of the commencement of the case, whether or not such a purchaser exists;
 

 (3) is for rent; or
 

 (4) is a lien of distress for rent.
 

 [14]
 

 . Section 506(d) was amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, § 448, 98 Stat. 333, 374, to read:
 

 To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void unless—
 

 (1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or
 

 (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.
 

 11 U.S.C. § 506(d). The instant action was filed before the effective date of this amended provision.
 

 [15]
 

 .
 
 See In re Spadel,
 
 28 B.R. 537 (Bankr.E.D.Pa.1983);
 
 In re Nefferdorf,
 
 26 B.R. 962 (Bankr.E.D.Pa.1983);
 
 In re Weathers,
 
 15 B.R. 945 (Bankr.D.Kan.1981); 3 Collier on Bankruptcy ¶ 506.07, at 506-21;
 
 see also In re Honaker, 4
 
 B.R. 415, 416 & n. 3 (Bankr.E.D.Mich.1980), and sources cited therein.
 

 [16]
 

 .
 
 See In re Graham,
 
 15 B.R. 1010, 1012 (Bankr.E.D.Pa.1981);
 
 In re McKay,
 
 15 B.R. 1013, 1016 (Bankr.E.D.Pa.1981).
 

 [17]
 

 .
 
 See
 
 Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, § 448(b), 98 Stat. 333, 374.
 

 [18]
 

 .
 
 See supra
 
 note 11.
 

 [19]
 

 . Under former Bankruptcy Rule 13-302(e)(l)', a claim not filed timely would be treated as unsecured under the plan for purposes of voting and distribution in a Chapter XIII case (the provisions of the Bankruptcy Act of 1898 that were revised as Chapter 13 of the Bankruptcy Reform Act of 1978).
 
 See
 
 15 Collier on Bankruptcy ¶¶ 13-302.01, 13-302.08[1] (14th ed. 1978). The rule was intended to facilitate the orderly and timely administration of Chapter XIII estates.
 
 See, e.g., NAACP Credit Union v. Louie,
 
 7 B.R. 145, 147 (E.D.Mich.1980). Employing language similar to that used to explain Rule 13-302(e)(1), the advisory committee noted that ‘‘[t]he automatic allowance effected by [former Rule 13-307(b), which provided that a claim was deemed allowed in the absence of objection by a party in interest,] is only for the purpose of distribution and does not constitute a determination as to the amount or validity of the claim for any other purpose." Former Bankr. Rule 13-307(b) advisory committee note,
 
 quoted in In re Henderson,
 
 577 F.2d 997, 1000 (5th Cir.1978). The court in
 
 In re Hines,
 
 20 B.R. 44, 48 (Bankr.S.D.Ohio 1982), observed that "Bankruptcy Rule 13-302(e)(l) should not be interpreted to invalidate liens, but merely as it establishes the procedure for the efficient administration of the proceedings by permitting the treatment of secured creditors who do not file or who file late as unsecured only for purposes of distribution under an 11 U.S.C. Chapter 13 plan.” The
 
 In re Hines
 
 court further stated that, "if the plan does not provide for payment to the creditor in an amount equal to the creditor’s security, then the lien should survive the Chapter 13 discharge.” Thus, confirmation of a plan treating a claim as unsecured could only have been res judicata as to issues of voting and distribution determined by the plan, or which could have been determined by the plan, because the court would not have considered the validity of a claim in the absence of a request by a party in interest to do so.
 
 See Rich v. Maryland Nat'l Bank,
 
 42 B.R. 350 (D.Md.1984);
 
 In re Willey,
 
 24 B.R. 369, 371 (Bankr.E.D.Mich.1982) (collecting cases). This conclusion is entirely consistent with the
 
 Long v. Bullard
 
 line of cases.