**In re 50–OFF STORES, INC., a Delaware Corporation; 50–Off Multistate Operations, Inc., a Nevada corporation; 50–Off Texas Stores, L.P., a Texas limited partnership; and 50–Off Operating Co., Inc., a Nevada corporation, Debtors**

**Bankruptcy Nos. 96–54430–C to 96–54433.**

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

Feb. 17, 1999.

## MEMORANDUM OPINION

LEIF M. CLARK, Bankruptcy Judge.

50–Off Stores, Inc. filed for reorganization under Chapter 11 of the Bankruptcy Code on October 9, 1996. At the time of the petition, the Debtor owed Kenney Manufacturing, Inc. money for prepetition goods and services. The Debtor subsequently scheduled Kenney's claim as "disputed." In March, 1997 the Debtor solicited Kenney and its other creditors for support of its proposed plan of reorganization. Kenney was classified as a general unsecured creditor in that plan. Kenney voted to accept the plan, and Kenney's vote was presumably counted by the Debtor in preparing its case for confirmation. This court entered an order confirming the Debtor's plan on June 3, 1997.

The Debtor filed its Omnibus Objection to Trade Claims after the confirmation of the plan, raising a variety of grounds to object to various claims. In the case of Kenney, the objection was that the claim was untimely, having been filed after the bar date. Kenney responded to the objection, arguing that the Debtor had waived any right to object to the untimeliness of Kenney's claim because the Debtor had affirmatively sought Kenney's support for the plan (by sending a plan solicitation package and ballot to Kenney), and had then actually counted Kenney's affirmative vote, employing the "disputed" amount of that claim for purposes of calculating the total dollar value of acceptances in the Trade Creditor class. Kenney maintains that, by this conduct, the Debtor (or its successor in interest, the Class 7 Agent) waived any right to object to the timeliness of Kenney's filing of its proof of claim.

After considering the arguments and briefs of counsel, the court took the matter under submission for further consideration. This opinion resolves the issue.

### ANALYSIS

▆▆▆ Waiver is the "intentional relinquishment of a known right." *Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1420 (5th Cir.1996). In certain circumstances, the failure to object to a claim before the confirmation of a plan may operate as a waiver of the right to object to that claim. *See In re Taylor,* 132 F.3d 256 (5th Cir.1998); *Simmons v. Savell (In re Simmons),* 765 F.2d 547 (5th Cir.1985). The present case does not present such circumstances.

### A. NO WAIVER BY SENDING PROPOSED PLAN OF REORGANIZATION AND BALLOT TO KENNEY

Parties whose interests may be adversely affected by a judicial proceeding are entitled to notice of that proceeding. Notice of a proceeding is an "elementary and fundamental requirement" of the Due Process Clause of the Fifth and Fourteenth Amendments. *Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 795, 103 S.Ct. 2706, 2709, 77 L.Ed.2d 180 (1983). The Fourteenth Amendment requires a State, before commencing an action which would adversely

affect an interest in life, liberty, or property protected by the Due Process Clause, to provide notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).

The notice requirement of the Due Process Clause prevents one party from ambushing others without giving those others an opportunity to protect their interests. It also protects the integrity of the judicial system by preventing it from becoming a party to such an ambush. These principles led the Court in *Mullane* to reject publication notice to parties who could be notified by more effective means such as personal service or mail. The Court held:

> "Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper... The chance of actual notice are further reduced when as here the notice required does not even name those whose attention it is supposed to attract, and does not inform acquaintances who might call it to attention. In weighing its sufficiency on the basis of equivalence with actual notice we are unable to regard this as more than a feint." *Id.* at 315, 70 S.Ct. at 658.

To prevent the divestiture of a property interest by feint, the Court required actual notice where practicable. *Id.* This conclusion, based upon the circumstances of the case, was hardened by the Court into a general rule in *Mennonite Board of Missions*, 462 U.S., at 798, 103 S.Ct., at 2711. There, the Court held that due process entitles any party whose address may be reasonably identified and who has a legally protected property interest to notice by mail or by personal service of any judicial proceeding which may adversely affect that interest. *Id.* The rule protects parties who hold a legally protected property interest from being surprised by an unexpected legal proceeding initiated by another when that other has the means to provide notice of the proceeding. It also protects the courts from becoming

involved in such an unseemly stratagem. Though *Mennonite Board of Missions* involved a state's obligation to afford due process, under the Fourteenth Amendment, the rule applies with equal force to the federal courts, by virtue of the operation of the Due Process Clause found in the Fifth Amendment. *In re All Funds in Accounts in Names Registry Pub., Inc.*, 58 F.3d 855, 856 (2nd Cir.1995) (Fourteenth Amendment procedural due process rules suggest the rule appropriate for a federal court under the Fifth Amendment).

■■■ Bankruptcy, of course, may adversely impact the property interests of creditors, and therefore those creditors must have adequate notice of any court proceedings which may have such an impact on their property interests. *See Mennonite Bd. of Missions*, 462 U.S. at 798, 103 S.Ct. at 2711. The Fourth Circuit held that the Fifth Amendment Due Process Clause entitles creditors to notice of the potential confirmation of a Chapter 13 plan. *See Piedmont Trust Bank v. Linkous (In re Linkous)*, 990 F.2d 160, 162 (4th Cir.1993). The court noted that Section 1327(a) binds "the debtor and each creditor, whether or not the claim of such creditor is provided by the plan, and whether or not such creditor has objected to, has accepted or has rejected the plan." Creditors are entitled to notice of the Chapter 13 plan confirmation because the confirmation of the debtors' plan may adversely affect the creditors' interests. *Id.* Likewise, Section 1141 provides that a confirmed Chapter 11 plan binds, *inter alia*, "any creditor..., whether or not the claim or interest of such creditor... is impaired under the plan and whether or not such creditor... has accepted the plan." 11 U.S.C. § 1141(a). Creditors of a Chapter 11 debtor are entitled to notice of the potential confirmation of the debtors proposed plan of reorganization because the confirmation of that plan may adversely impact the property interests of those creditors. *See Linkous*, 990 F.2d at 162. Furthermore, any creditor whose address is reasonably identifiable from the debtor's schedules is entitled to actual notice by mail or by personal service. *See Men-*

*nonite Bd. of Missions*, 462 U.S. at 798, 103 S.Ct. at 2711.

■ Scheduled creditors therefore have a due process right to actual notice, by mail or by personal service, of the proposed plan. *See id.* The Chapter 11 plan proponent has a corresponding obligation to provide creditors with that notice.

■ The due process clause also requires that the affected party have an opportunity "to be heard at a meaningful time and in a meaningful manner." *See, e.g., Fuentes v. Shevin*, 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972). In the context of a chapter 11 plan proposed for confirmation, that means that an affected creditor ought to have the right to vote on the plan—and that necessarily means voting either *for* or *against* the plan. The debtor certainly "solicits" acceptances, but it risks the possibility that a sufficient number of creditors in a given class (whether by number or amount) will *reject* the plan. Creditors deserve the opportunity to "vote" their opposition to a given plan, and must receive the plan solicitation package in order to register that sort of vote. Creditors who are deprived of the opportunity to vote against a given plan are deprived of their due process rights under the Constitution. This is especially true because the rights of a given creditor class that registers a sufficient number of negative votes to reject the plan are increased as a result—the debtor must resort to "cramdown" in order to then obtain confirmation over that rejection. 11 U.S.C. § 1129(b). What is more, creditors are bound by the terms of a confirmed plan, whether they've voted for it or not, so their ability to vote against the plan is especially important and valuable. 11 U.S.C. § 1141(a). Creditors may not be denied the opportunity to register that vote. Such a deprivation would be an unconstitutional deprivation of those creditors' right to procedural due process. *See Fuentes*, 407 U.S. at 80, 92 S.Ct. at 1994.

The Debtor met its due process obligation by sending Kenney the proposed plan of reorganization along with a ballot, by which Kenney could express its opinion on the plan—and have that opinion count. A debtor cannot be held to have *waived* its own legal right to later object to creditors' claims simply by doing what that debtor is expressly required to do by the Constitution. Because the debtor was *required* to provide notice to the creditors of its proposed plan of reorganization, providing that sort of notice could not have been an "intentional relinquishment or abandonment of a known right." *See Douglass*, 79 F.3d at 1420. Sending Kenney the proposed plan of reorganization and ballot did not operate as a waiver of the right to object to that creditor's claim.

**B. COUNTING VOTES FOR PLAN CONFIRMATION**

Kenney has also argued that the Debtor waived its right to object to Kenney's claim by *counting* Kenney's vote toward the confirmation of the plan. The possibility that a given action or failure to act would be treated as a waiver would, of necessity, raise a concomitant duty to refrain from or perform that act in order to avoid triggering a waiver. If it is indeed possible to waive an objection to a given claim by counting that claim's affirmative vote for plan confirmation, then all objections to claims would have to be brought prior to plan confirmation.

■ The creation of such an implied deadline for objections to claims would create a bar date that is not in the Code or Rules. Neither Section 502 of the Bankruptcy Code, which governs the allowance of claims, nor Bankruptcy Rule 3007, which governs objections to claims, imposes any time limitation on objections to claims. 11 U.S.C. § 502; Fed. R. Bankr.P. 3007.[1] Indeed, section 502(j) affords a party an opportunity to obtain *reconsideration* of either the allowance or disallowance of a claim *at any time*— including post-confirmation. "[T]he general rule is . . . that objections to claims are not required to be filed prior to confirmation of a plan." *Council of Apartment Owners of Bellaire House Condominiums, Inc. v. Yentis*

---

1. Section 502(j) provides that a claim "that has been allowed or disallowed may be reconsidered for cause."

*(In re Yentis)*, 125 B.R. 158, 162 (N.D.Tex. 1991).[2]

In the Fifth Circuit, there are only two exceptions to the general rule that objections to claims may be filed at any time. First, an objection based on the plan's alleged misclassification of the objectionable claim as a secured claim must be made prior to plan confirmation. *See Simmons v. Savell (In re Simmons)*, 765 F.2d 547, 553 (5th Cir.1985) The court in *Simmons* expressly acknowledged that its ruling created an implied bar date to the filing of objections to secured claims. *Id.* Second, the Fifth Circuit held in a recent decision that an objection to a non-dischargeable tax claim must be made before the confirmation of the plan (for reasons similar to those announced in *Simmons* ). *In re Taylor*, 132 F.3d 256 (5th Cir.1998).

In each of these cases, the debtor had attempted to reduce or eliminate a creditors' claim by means of a provision in the plan of reorganization. Both the holder of a secured claim and the holder of a non-dischargeable tax claim have the absolute right to "ride through" the bankruptcy process, but are nevertheless also bound by the terms of a confirmed plan.[3] *See id.;* 11 U.S.C. § 1141(a). The court reasoned that allowing a debtor to reduce these creditors' claims using the provisions of a confirmed plan effectively compels such creditors' active participation in the bankruptcy to protect their interests, thus destroying their right to "ride through" the bankruptcy. The Fifth Circuit concluded that creditors' claims that can "ride through" bankruptcy cannot be attacked by means of a plan. Instead, the debtor must initiate a claim objection or a determination of tax liability *before* the confirmation of the plan. *See id.* at 260–61.

The exception to the general rule carved out by the Fifth Circuit in *Simmons* and *Taylor* are not applicable to ordinary unsecured claims, because the justification for the exception is absent. *See Taylor*, 132 F.3d 256; *Simmons*, 765 F.2d 547. Unsecured creditor claims have no right to "ride through" the bankruptcy. Instead, they are forced to participate or find their claim discharged (and unpaid) as a result of the plan process. There is therefore no reason to depart from the general rule that objections to claims need not be filed prior to plan confirmation when it comes to ordinary unsecured claims. *See Yentis*, 125 B.R. at 162. Kenney holds an ordinary unsecured claim in this case, and so is governed by the general rule. There is nothing about Kenney's claim that would warrant the invocation of the special exception carved out by the Fifth Circuit for secured claims and nondischargeable claims. Thus, neither *Simmons* nor *Taylor* offer Kenney any assistance.

Solid policy considerations also support the conclusion that we reach here. A departure from the general rule, which would require all claims objections to be entertained prior to plan confirmation, would severely diminish the ability of any Chapter 11 with many unsecured creditors to reorganize successfully. Such a rule would impose on the plan proponent a duty to establish the viability of every claim against the bankruptcy estate prior to plan confirmation, or risk forfeiting the ability to object to those claims after confirmation. The plan proponent would thus have to negotiate all claims and be prepared to litigate claim objections which cannot be negotiated, while simultaneously preparing for the confirmation of the plan. All claims objections would have to be resolved prior to confirmation. Such a duty would overwhelm the resources of the plan proponent—and proponent's counsel—in any case in which there are many unsecured

---

**2.** This general rule recognizes that debtors cannot do everything at once. The Supreme Court has instructed that Chapter 11 cases should be administered rapidly. *See United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 375–76, 108 S.Ct. 626, 633, 98 L.Ed.2d 740 (1988). Chapter 11 cases could not be administered rapidly if the debtor and debtor's counsel were required to resolve all claims prior to plan confirmation. *See* discussion, *infra.*

**3.** A secured creditor's right to "ride through" the bankruptcy is protected by 11 U.S.C. § 506(d)(2). The holder of a claim for non-dischargeable tax may stay outside the bankruptcy because such a claim is protected from discharge by § 1141 and § 523, "whether or not a claim for such tax was filed or allowed." *See Taylor*, 132 F.3d at 261.

creditors. The consequent delay in achieving confirmation would frustrate the ability of many debtors to reorganize. "A debtor's business needs in the marketplace will not wait for the litigation process." *Sunrise Energy Co. v. Maxus Gas Marketing (In re Sunpacific Energy Management, Inc.)*, 216 B.R. 776, 778 (Bankr.N.D.Tex.1997). The Supreme Court has already placed a premium on rapid administration of chapter 11 cases. *See United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 375–76, 108 S.Ct. 626, 633, 98 L.Ed.2d 740 (1988). That rule cannot coexist with a rule that requires the completion of the claims process prior to proceeding with the plan of reorganization.[4]

Although the Fifth Circuit had sound reasons to make an exception to the general rule for secured creditors and for nondischargeable claims, the general rule that objections to claims can be made after plan confirmation should not be abrogated without clear direction from Congress.

### CONCLUSION

For the foregoing reasons, the court concludes that the objection of the Class Seven Agent to the claim of Kenney, on grounds of untimeliness, is well-taken, and that the responsive concerns raised by Kenney are not well-taken. The claims objection will, accordingly, be sustained, and the claim of Kenney disallowed.

**So ORDERED.**

4. Indeed, Congress could hardly have intended such a rule, given that it gives to debtors only four months exclusivity within which to propose a plan of reorganization. *See* 11 U.S.C. § 1121.