T.C. Memo. 2004-37


UNITED STATES TAX COURT


H. DEE JOHNSON, JR. AND MARY L. JOHNSON, n.k.a. MARY L. ALPHIN,
Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10839-99.                    Filed February 17, 2004.


        <u>Held</u>:  PH's debts to lender were discharged
pursuant to discharge order in ch. 7 bankruptcy case,
notwithstanding failure of lender to file proofs of
claim; lender's foreclosure therefore gave rise to
excludable discharge of indebtedness income, which
reduced PH's tax attributes pursuant to sec. 108(b),
I.R.C., in amount of unsatisfied debt to lender
remaining after foreclosure.


        H. Dee Johnson, Jr., pro se.

        <u>Donna B. Read</u>, for respondent.

MEMORANDUM OPINION

HALPERN, <u>Judge</u>:  Respondent has determined deficiencies in petitioners' Federal income taxes of $22,297 and $13,179 for 1994 and 1995, respectively (the audit years).  The parties have settled or otherwise disposed of certain of the adjustments resulting in those determinations, and the only question remaining for decision is whether petitioner husband (petitioner) has available for use by him in the audit years a claimed $153,000 net operating loss (NOL) derived from his bankruptcy estate.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the audit years, and all Rule references are to the Tax Court Rules of Practice and Procedure.

This case was submitted for decision without trial.  See Rule 122.  The parties have agreed to stipulate certain facts (the stipulation).  The stipulation, with attached exhibits, is incorporated herein by this reference.  We shall not here repeat the stipulation or recite the contents of the attached exhibits.  We shall, however, summarize certain facts as an aid

to understanding our report.  Petitioners bear the burden of proof.  See Rule 142(a)(1).[1]

<u>Background</u>

At the time the petition was filed, petitioners resided in Dallas, Texas.

On September 3, 1991, petitioner filed a voluntary petition in bankruptcy (the bankruptcy petition) with the U.S. Bankruptcy Court for the Eastern District of Texas (the bankruptcy court). The bankruptcy petition was filed pursuant to chapter 7 of the Bankruptcy Code (11 U.S.C.).  Upon the filing of the bankruptcy petition, a taxable person separate from petitioner came into existence; i.e., the bankruptcy estate (bankruptcy estate).  See sec. 1398(a).  A trustee (the trustee) was appointed to represent the bankruptcy estate.  Among the assets of the bankruptcy estate were (1) a "$153,000 business debt" (the business debt), (2) real property located in Argyle, Texas (the Argyle property), and (3) real property located in Dallas, Texas (the Dallas property). The business debt became worthless in 1991 after becoming an asset of the estate.   Both the Argyle property and the Dallas property (together, the properties) secured debts of petitioner

---

[1] Sec. 7491, which, under certain circumstances, shifts the burden of proof to the Commissioner, is inapplicable because the examination in this case began before July 22, 1998, the effective date of that section.  See Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(c), 112 Stat. 727.

to Citicorp Mortgage, Inc. (CMI).  Petitioner was delinquent on those debts (the CMI debts) at the time petitioner filed the bankruptcy petition, and CMI is listed as a secured creditor with respect to the CMI debts in a schedule attached to that petition. CMI did not file any proof of claim with respect to the CMI debts.

On October 31, 1991, CMI moved the bankruptcy court to lift the stay prohibiting it from foreclosing petitioner's interests in the properties, and, on December 2, 1991, the court granted the motion.  By order of the bankruptcy court dated December 18, 1991 (the discharge order), petitioner was released from all dischargeable debts.

Under the authority of the bankruptcy court's December 2, 1991, order, CMI foreclosed petitioner's interests in the properties and caused the properties to be sold.  The Argyle property was sold on March 3, 1992, leaving a deficiency (the amount petitioner still owed) calculated as follows:

| | |
|---|---|
| Loan balance | $262,128 |
| Sale price | 171,500 |
| Deficiency | 90,628 |

The Dallas property was sold on April 7, 1992, leaving a deficiency (the amount petitioner still owed) calculated as follows:

| | |
|---|---|
| Loan balance | $128,572 |
| Sale price | 21,700 |
| Deficiency | 106,872 |

Neither the trustee nor petitioner satisfied the two deficiencies, totaling $197,500 (the CMI deficiencies), in any amount.

On April 15, 1994, the trustee made a final report to the bankruptcy court (trustee's final report), reporting that the total of the debts allowed was $52,590.14 and that the sum of $47,673.98 was to be paid in respect of those claims, leaving the sum of $4,916.16 unpaid. The bankruptcy court accepted the trustee's final report. The bankruptcy court issued a final decree closing the bankruptcy case of petitioner on May 5, 1995.

Neither the bankruptcy estate nor petitioner reported any income from discharge of indebtedness on any Federal income tax return.

Petitioners made joint returns of income for the audit years and, on those returns, claimed that petitioner had available for use by him for those years a $153,000 NOL resulting from the worthlessness of the business debt. Following his audit of petitioners' returns for the audit years, respondent disallowed the claimed NOL carryover.

## Discussion

Section 61(a)(12) includes as an item of gross income "Income from discharge of indebtedness". Section 108(a)(1)(A) provides that gross income does not include income from the discharge of indebtedness if "the discharge occurs in a title 11

case".  Section 108(d)(2) provides that the term "title 11 case" means "a case under title 11 of the United States Code (relating to bankruptcy), but only if the taxpayer is under the jurisdiction of the court in such case and the discharge of indebtedness is granted by the court or is pursuant to a plan approved by the court."  Section 108(b) provides that the amount excluded from gross income under section 108(a)(1) must be applied to reduce certain tax attributes of the taxpayer, including any NOL of the taxpayer for the taxable year of the discharge and any NOL carryover to that year.

The parties are in agreement that the business debt became worthless in the hands of the trustee, producing a deductible loss of $153,000.  They are in disagreement as to the amount of petitioner's debt discharged by operation of the discharge order. Petitioner appears to argue that, because the trustee's final report (accepted by the bankruptcy court) does not list the CMI debts as claims against the bankruptcy estate, those debts were not discharged.  Respondent disagrees.  On that point--whether, by the discharge order, petitioner was discharged from the CMI debts--we agree with respondent.  Petitioner misunderstands the bankruptcy law.

The CMI debts are not listed in the trustee's final report because CMI did not file proofs of claim with respect thereto.  A proof of claim is the mechanism by which a creditor seeks

recognition (or, in bankruptcy parlance, "allowance") of his claim for purposes of sharing in the distribution of estate assets as part of the bankruptcy proceeding. See 3 Cowans, Bankruptcy Law and Practice, sec. 12.5(a), at 247 (7th ed. 1998). There is no requirement that a creditor file a proof of claim; that is, some creditors may seek recovery outside of the normal estate distribution procedure. See 11 U.S.C. sec. 501(a) (2000) (creditor "may" file a proof of claim); see also In re Simmons, 765 F.2d 547, 551 (5th Cir. 1985) (a proof of claim should be filed only when some purpose would be served thereby). For instance, a secured creditor can seek recovery by requesting relief from the automatic stay in order to exercise his foreclosure rights. See 11 U.S.C. sec. 362(d) (2000). A secured creditor who is content to use foreclosure as his sole means of recovery might opt not to bother with a proof of claim. Such apparently was the case here.

By failing to file proofs of claim with respect to the CMI debts, CMI waived its right to participate, vis-a-vis the CMI deficiencies, in the distribution of estate assets as provided in the trustee's final report. See 11 U.S.C. sec. 506(a) (2000) (an allowed claim of a creditor secured by a lien is an unsecured claim to the extent the value of the property is less than the amount of such allowed claim); 11 U.S.C. sec. 726 (2000) (distribution of property of the estate). That is not to say,

however, that those amounts were not discharged. To the contrary, 11 U.S.C. section 727(b) (2000) provides that, with exceptions not here relevant, the effect of a discharge by a bankruptcy court is to discharge the debtor "from all debts that arose before the date of the order for relief under this chapter * * * whether or not a proof of claim based on any such debt * * * is filed under section 501 of this title". Accordingly, notwithstanding their omission from the trustee's final report, the CMI debts were discharged, giving rise to excludable discharge of indebtedness income in the amount of the CMI deficiencies ($197,500). See sec. 108(a)(1)(A).

Petitioners concede that, if respondent prevails (i.e., if excludable income from discharge of indebtedness was realized on account of petitioner's discharge from the CMI debts), "$153,000 of * * * [the NOL] deduction [claimed on petitioners' 1994 income tax return] is eliminated under Section 108(b), and Petitioner's [sic] income tax return must be adjusted accordingly." As contemplated by petitioners, respondent has prevailed. We therefore conclude that petitioners concede the correctness of respondent's adjustments eliminating from petitioners' returns for the audit years the claimed $153,000 NOL carryover resulting from the worthlessness of the business debt. We shall not disturb respondent's adjustment on account thereof.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.