**IN the Matter of Archibald F. BERNARD, Sr., Debtor.**

**Bankruptcy No. A92–77847–WHD.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Jan. 2, 1996.

Diana McDonald, Thomas & McDonald, P.C., Atlanta, Georgia, for Debtor.

Mark A. Kelley, Kitchens Kelley Gaynes, P.C., Atlanta, Georgia, for World Savings and Loan Association.

### ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

This matter comes before the Court on an Objection to Proof of Claim by Archibald Bernard (hereinafter "the Debtor"). The Debtor brings this objection in opposition to the bankruptcy claim of World Savings and Loan (hereinafter "World") and, as such, the matter forms a core proceeding for the Court's determination. *See* 28 U.S.C. § 157(b)(2)(A), (B) & (O). The Court bases its decision upon the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

World Savings and Loan holds a first priority deed to secure debt on what it now acknowledges to be the Debtor's residence. The instant controversy turns on the amount which properly should be paid from the Debtor's estate in satisfaction of World's claim arising from that debt. Specifically, the Debtor asks the Court to disallow certain attorney's fees and expenses associated with a foreclosure sale conducted by World after the commencement of the Debtor's bankruptcy case.[1] Under the Debtor's argument, to

---

1. Acting upon an existing default in its loan and believing the property to be owned by a third party, World previously had scheduled a foreclosure for November 3, 1995. Although the Debtor filed his Chapter 13 petition on November 2, 1995, World nonetheless proceeded to

the extent that World incurred these expenses in violation of the automatic stay, *see* 11 U.S.C. 362, it should not recoup them as part of its bankruptcy claim.

Rather than contesting the substance of the Debtor's objection, World appears to challenge its form and timeliness. To that end, World points out that it filed a proof of claim for $145,094.08, a figure which included the fees and expenses at issue, on January 19, 1993. Furthermore, the creditor notes that on February 10, 1993, the Court confirmed the Debtor's plan of reorganization in an Order which directed any remaining claims objections to be pursued within six months thereafter. As such, contends World, under the doctrine of res judicata, the plan and confirmation Order prohibit the Debtor from presenting this claim objection at a point more than two years subsequent.

## CONCLUSIONS OF LAW

### I. *Section 1327(a) and the Feasibility of Post–Confirmation Objections to Claim.*

■ With regard to the impact of confirmation, the Bankruptcy Code provides that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). Fulfilling a

need to somehow dispose of reorganizations with finality, this provision closely tracks the operation of the res judicata doctrine.[2] Thus, it is frequently said that the order of confirmation binds both creditor and debtor on any matter which was *or could have been* raised as part of the confirmation process. *See In re Szostek*, 886 F.2d 1405, 1408–09 (3d Cir.1989); *Simmons v. Savell (In re Simmons)*, 765 F.2d 547, 553–54 (5th Cir.1985); *Anaheim Sav. & Loan Assoc. v. Evans (In re Evans)*, 30 B.R. 530, 531 (Bankr.9th Cir. 1983).

■ Applying the mandate of Code section 1327(a), the Court finds that objections regarding the amount which the plan should pay in satisfaction of a claim, like contests of the plan's classification of that claim, form just such a matter which could have been raised in the course of the plan-confirming process. To the extent that a debtor may have had the opportunity to object to a specific aspect of a claim before or during the confirmation hearing, his failure to do so, therefore, should cement the presumption of that claim's validity. *See Fawcett v. United States (In re Fawcett)*, 758 F.2d 588, 590–91 (11th Cir.1985) ("The crucial point is that the plan was confirmed by the court. It is the debtor's obligation when seeking confirmation to specify as accurately as possible the amounts which it intends to pay creditors");

foreclose upon the mortgage, presumably because a title report failed to disclose the reconveyance of the property back to the Debtor only a few days earlier. Upon realizing the Debtor's status as owner of the property, World filed a proof of claim in his bankruptcy case. As part of that claim, World included the attorney's fees and expenses which it had incurred in mistakenly foreclosing on its loan.

2. Res Judicata, or claim preclusion, serves to bar re-litigation of those matters which were or could have been litigated as part of an earlier case. Courts, therefore, evaluate the doctrine's applicability by reference to the following four inquiries:

(1) Whether the prior judgment was validly rendered by a court of competent jurisdiction in accordance with the requirements of due process.
(2) Whether the prior judgment was final and on the merits.

(3) Whether there exists an identity of both parties or their privies.
(4) Whether the later proceeding involves the same "cause of action" as its predecessor.
*See Windsor v. McVeigh*, 93 U.S. 274, 277–78, 23 L.Ed. 914 (1876); *United States v. Hartley*, 612 F.2d 1009, 1010 (5th Cir.1980). Closely related to the doctrine of claim preclusion is the doctrine of "law of the case." Properly understood, however, law of the case "is a rule of practice under which a rule of law enunciated by a federal court 'not only establishes a precedent for subsequent cases under the doctrine of stare decisis, but [also] establishes the law which ... will, normally, apply to the same issues in subsequent proceedings in the same case.'" *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1550 (11th Cir.1990) (quoting *Morrow v. Dillard*, 580 F.2d 1284, 1289 (5th Cir.1978) (citations and footnotes omitted)). Thus, as its name applies, "law of the case" prevents re-litigation of those matters directly or necessarily decided at some earlier point in an ongoing action. *See id.*

*Simmons,* 765 F.2d at 553–54; *In re Keaton,* 182 B.R. 203, 204 (Bankr.E.D.Tenn.1995); *In re Bancroft Cap Co.,* 182 B.R. 538, 539 (Bankr.E.D.Ark.1995) (given debtor's failure to file a claim objection, the combined effect of 11 U.S.C. 502(a) and the confirmed plan served to make the claim allowed as a matter of res judicata). Consequently, both the common law doctrine of res judicata and the Bankruptcy Code should preclude a debtor from presenting any new objections once confirmation has taken place, unless there exists either a plan reservation to the contrary[3] or a conflicting provision for post-confirmation challenges elsewhere within the Bankruptcy Code.

## II. Reading Section 1327(a) in Conjunction with Related Bankruptcy Code Provisions.

### A. The Interplay of Sections 1327(a) and 502(a).

A review of associated Bankruptcy Code sections appears to support, at least to some degree, the extension of section 1327(a)'s res judicata bar to post-confirmation objections. For instance, section 502 provides the following mechanism for the validation or challenge of claims:

(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

(b) Except as provided in subsections (e)(2), (f), (g), (h), and (j) of this section, if such objection to claim is made, the court,

after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States

\* \* \* \* \* \*

11 U.S.C. 502(a), (b). Notwithstanding its provision for claim objections by those with an interest in such a challenge, section 502 remains noticeably silent regarding the point at which the objection process must come to an end. Section 502, therefore, offers nothing either in support or in contradiction of section 1327(a)'s apparent bar upon post-confirmation objections.

To the extent, however, that section 502 offers no definite statement upon the issue at hand, incorporating its provisions with those of section 1327(a) should present a simple matter of statutory construction: (1) a party in interest may object to any claim of a creditor; (2) absent some prior challenge or reservation, however, at the point of confirmation each claim shall be deemed valid and allowed; and (3) the act of confirmation will preclude any subsequent attempt to raise a section 502(a) "objection to claim." *Bancroft Cap,* 182 B.R. at 539; *Fryer v. Easy Money Title Pawn, Inc. (In re Fryer),* 172 B.R. 1020, 1025 n. 4 (Bankr.S.D.Ga.1994) (Dalis, B.J.); *In re Clark,* 172 B.R. 701, 704–05 (Bankr.S.D.Ga.1994) (Walker, B.J.). In other words, unless a party or the Court has stated and, in fact, included a reservation to the contrary, the section 502 "objection to claim" should have no place in the post-confirmation world. *Id.*

### B. The Impact of Section 502(j).

The Court's analysis does not end, however, with the impact of section 502(a) upon the

---

**3.** Given that the confirmation Order lies at the root of section 1327(a)'s res judicata bar, that same Order presents the first logical candidate for an exception. Indeed, where the Order, or the reorganization plan which it confirmed, includes a reservation by the debtor of a right to bring future claim objections, res judicata should cement terms of that reservation just as it would the rest of the Order and allow the reservation to create its own statute of limitations for future objections. *In re Bancroft Cap Co.,* 182 B.R. 538, 538–39 (Bankr.E.D.Ark.1995); *Holly's Inc. v. City of Kentwood (In re Holly's Inc.),* 172 B.R. 545, 564 n. 24 (Bankr.W.D.Mich.1994); *Bonwit Teller, Inc. v. Jewelmasters, Inc. (In re Hooker Inv., Inc.),* 162 B.R. 426, 433–34 (Bankr.S.D.N.Y.

1993). Thus, the unique terms of the plan and Order potentially may provide for future objections to claim, notwithstanding 11 U.S.C. 1327(a).

Here, while the confirmation Order made expressed provision for post-confirmation objections, that reservation came subject to a six month time limitation. As such, the text of that Order cannot be read to provide license for the presentment of new claim objections at a point more than two years after confirmation. *Bancroft,* 182 B.R. at 538–39. Indeed, to the contrary, the Court finds the terms of the Order to suggest that, absent an objection within the six month period, all claims shall be deemed valid. *Hooker,* 162 B.R. at 433–34.

apparent mandate of section 1327(a). Specifically, having concluded that confirmation carries with it an implicit determination of claim validity governed by the principles of res judicata, the Court next must determine the extent to which that implied decision itself may be reconsidered. On the question of reconsideration, section 502(j) provides the following guidance:

> A claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case. Reconsideration of a claim under this subsection does not affect the validity of any payment or transfer from the estate made to a holder of an allowed claim on account of such allowed claim that is not reconsidered, but if a reconsidered claim is allowed and is of the same class as such holder's claim, such holder may not receive any additional payment or transfer from the estate on account of such holder's allowed claim until the holder of such reconsidered and allowed claim receives payment on account of such claim proportionate in value to that already received by such other holder. This subsection does not alter or modify the trustee's right to recover from a creditor any excess payment or transfer made to such creditor.

11 U.S.C. § 502(j). Certainly, the principal message of this section lends itself to little confusion—once the Court has evaluated a claim's validity and rendered a decision on the matter, that conclusion may be reconsidered, *but only for cause.*

■ The process of section 502(j) appears directly applicable to the question at hand. As previously noted, under section 1327(a), the confirmation hearing marks the point of an implicit determination of claim validity. *See Fawcett,* 758 F.2d at 590–91; *Simmons,* 765 F.2d at 553–54; *In re Keaton,* 182 B.R. at 204; *Bancroft Cap,* 182 B.R. at 539. Similarly, as the "point of allowance determination," [4] the confirmation event triggers the default governance of section 502(j)'s reconsideration procedures. *Fryer,* 172 B.R. at 1020. When read collectively,[5] sections 1327(a), 502(a) and 502(j), therefore, appear to direct that confirmation implicitly decides claim validity and, after confirmation, the section 502(j) "motion to reconsider" presents the only means by which a claim's validity may be questioned. *Clark,* 172 B.R. at 704; *Fryer,* 172 B.R. at 1025 n. 4 (treating that debtor's "objection" as a section 502(j) motion to reconsider); *Johnson v. Farmers Furniture Co. (In re Johnson),* 1990 WL 605089, No. 87–10284 at *2 (Bankr.S.D.Ga. Aug. 13, 1990) (noting the proper form for post-confirmation claim objections). To that

4. Admittedly, there exists a subtle tension between the finality conferred by section 1327(a) and the court's power to reconsider allowance under section 502(j). *International Yacht & Tennis, Inc. v. Wasserman (In re International Yacht & Tennis, Inc.),* 922 F.2d 659, 662 (11th Cir. 1991). Specifically, adherence to both provisions creates a rule whereby the parties themselves cannot object to claims after confirmation, yet they may ask the Court to reconsider that implicit allowance decision which forecloses them from further objection. Indeed, one might be tempted to find post-confirmation reconsideration under section 502(j) precluded as a matter of res judicata, just like the 502(a) objection itself. *See In re Duke,* 153 B.R. 913, 916–17 (Bankr.N.D.Ala.1993) (finding the prospect of reconsideration blocked by the res judicata effect of confirmation). The Court, however, believes that such an interpretation would not accurately gauge the true interplay of sections 1327(a) and 506(j).

First, a conclusion that res judicata bars reconsideration of allowance after confirmation would require one substantially to read section 502(j)

out of the books. *Fryer,* 172 B.R. at 1023. Second, such an interpretation overlooks the mechanics behind the two sections. By definition, one only may grant reconsideration after some decision has been reached. Here, that implicit decision of allowance took place at confirmation and, thus, a "reconsideration" could only occur at some time post-confirmation. It certainly, therefore, may not be said that reconsideration "could have been heard as part of confirmation" so as to fall within the res judicata bar of section 1327(a). Indeed, as is normally the case with court decisions, a motion to reconsider offers the means by which to change the very decision which otherwise would become res judicata. See *Fryer,* 172 B.R. at 1023; see also *In re Clark,* 172 B.R. 701, 704 (Bankr.S.D.Ga.1994) (finding that implicit decision of confirmation binds parties does not end a court's analysis because section 502(j) reconsideration remains an option).

5. Where possible, courts must give effect to all relevant sections of the Code, reading them in a collective fashion. *Reiter v. Sonotone Corp.,* 442 U.S. 330, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979).

extent, the Court finds section 502(j) to pose a narrow exception to the otherwise unwavering bar which section 1327(a) places upon re-litigation of claim allowance after confirmation.[6]

### III. The Debtor's Objection as a Section 501(j) Motion.

 Treating the Debtor's "Objection to Claim" as a "Motion to Reconsider" under section 502(j), the Court next must determine whether cause exists to grant such a request. The presence of "cause" under section 502(j) is said to hinge upon the following factors:

(1) whether granting review will prejudice the debtor or other creditors;

(2) the length of the delay and its impact on efficient court administration;

(3) whether the delay was beyond the reasonable control of the person whose duty it was to perform;

(4) the presence of good faith;

(5) whether clients should be penalized for their counsel's mistake or neglect;

(6) whether the claimant has a meritorious claim;

Sentry Fin. Serv. Corp. v. Pitrat (In re Resources Reclamation Corp. of America), 34 B.R. 771, 773–74 (9th Cir. BAP 1983). Also, to the extent that it must weigh such a variety of considerations, the Court has substantial discretion regarding when to grant reconsideration under section 502(j). Halverson v. Cameron (In re Mathiason), 16 F.3d 234, 239 (8th Cir.1994).

Here, the Debtor filed his "objection to claim" more than 26 months after confirmation. More importantly, as justification for that delay, he submits that he has spent the intervening time pursuing a settlement with World, and that the avenue of compromise only recently proved to be a dead end. Thus, reasons the Debtor, the Court should revisit allowance of World's claim at a point more than two years subsequent to confirmation.

The Court normally would agree that the pursuit of settlement options constitutes "cause" by which to justify a delay in requesting reconsideration of claims. See In re Rankin, 141 B.R. 315, 317–20 (Bankr. W.D.Tex.1992); In re Barrett, 136 B.R. 387, 391 (Bankr.E.D.Pa.1992) (noting that section 502(j) involves balancing a variety of equitable interests). As time drags on, however, even this noble interest ceases to offer a foundation upon which one may build a case for "cause." Thus, somewhere during the many months which elapsed, the Debtor's continued failure to act has become both

---

6. Aside from following the mandate that all Code sections shall be given effect, the Court believes that interpreting section 502(j) as the only means by which to avoid section 1327(a)'s bar serves to satisfy all policy concerns in play. Giving section 1327(a) the effect of an absolute bar upon post-confirmation claim challenges certainly would seem both imprudent and, on occasion, inequitable. L. King, 8 COLLIER ON BANKRUPTCY ¶ 3007.03 (15th ed. 1993) (suggesting that confirmation should not be read as an absolute bar). At the same time, however, the Court's own interests, as well as those of the parties, demand at least some sense of finality to the objection process. In re Earley, 74 B.R. 560, 563 (Bankr.C.D.Ill.1987) (citing In re Seminole Park & Fairgrounds, Inc., 502 F.2d 1011, 1014 (5th Cir.1974), for the Court's need to police unreasonably delayed objections). The treatment of confirmation as a determination of claim validity which binds the parties, yet which may be reviewed by the Court for cause, would appear to accommodate each of those concerns as well as the plain meaning of the Code.

Furthermore, the Court notes that the presence of section 502(j) makes it unnecessary for members of the bench to engage in judicial gymnastics at the behest of pragmatics and policy. In particular, in the presence of this statutory exception, courts need not, and should not, make strained and somewhat arbitrary efforts to limit section 1327(a) case law to its facts. See, e.g., In re Kula, 107 B.R. 225, 226 (Bankr.D.Neb.1989) (limiting the Fifth Circuit's holding in In re Simmons, 765 F.2d 547 (1985), to fix confirmation as a deadline only for those objections based upon the secured status of a claim); Woolaghan v. United Mortgage Serv., Inc. (In re Woolaghan), 140 B.R. 377, 380 (W.D.Pa.1992) (citing L. King, 8 COLLIER ON BANKRUPTCY ¶ 3007.03 (15th ed.), to support a similar limitation of the Simmons case to its classification-challenging facts). Both the classification of a claim and the amount which should be paid upon it form matters which "could have been raised" as part of the plan confirmation. Thus, under a true application of the res judicata doctrine, each matter should be barred from relitigation once confirmation has taken place. Section 502(j), rather than a half-hearted application of the res judicata doctrine, offers the proper means by which to revisit the issue of claim allowance post-confirmation.

unreasonable and unjustifiable under the terms of section 502(j).[7]

Furthermore, the Court notes the degree to which the Debtor has exceeded the provisions of the Confirmation Order itself. As previously pointed out, that Order directed the Debtor to present all challenges to claims within the first six months following confirmation. The Debtor's failure to observe that internal statute of limitations argues heavily against the presence of "cause" in this case. *See Bancroft Cap*, 182 B.R. at 540 (finding that failure to challenge a claim within the period specified in the debtor's plan foreclosed subsequent access to section 502(j)).

In sum, the Debtor simply has waited too long to bring this matter to the Court's attention. As Judge Walker reasoned when faced with a similar dilemma:

"The court's broad discretion [regarding section 502(j) ] should not ... encourage parties to avoid the usual rules for finality of contested matters." *Colley v. Natl. Bank of Tex. (In re Colley)*, 814 F.2d 1008, 1010 (5th Cir.1987). The equitable power of the Court to reconsider claims after confirmation must be exercised cautiously, acknowledging the just expectations of all parties that the rights fixed under a plan are final. In the case before the Court, Debtor offers no explanation for its failure to object to [the claim in question]. The entire bankruptcy process depends upon the vigilance of the parties to monitor claims made upon the estate. If the Court were to allow reconsideration of claims merely upon a showing that the debtor was asleep at the switch, there would be no finality to the bankruptcy process. As the court in *Colley* observed, "[O]ld bankruptcy cases, like old soldiers, never die ..." It appears instead that they haunt the halls of the bankruptcy court until they are laid to rest. If there were no finality to the confirmation and claims allowance process,

such restless spirits would likely overwhelm the entire system.

The maxim "vigilantibus non dormientibus aequitas subvenit," or equity aids the vigilant, not those who slumber on their rights, has particular application in such a case. Debtor has failed to demonstrate that the equities of the case in favor of allowing reconsideration of [the creditor's] claim outweigh the necessity for finality in both the claims allowance process and the rights of the parties as established by the confirmed plan. The Court will not exercise its discretion to reconsider [allowance of the claim]

\* \* \* \* \* \*

*Clark*, 172 B.R. at 704–05 (footnotes omitted). Having slumbered on his rights for such an unjustifiably protracted time, the Debtor cannot now demonstrate "cause" sufficient to impose upon the Court for a belated reconsideration of the World Savings & Loan claim.

### CONCLUSION

Confirmation as well as the Court's own time reservation for post-confirmation objections having come and gone, the Court finds Archibald Bernard's "Objection to Proof of Claim" of World Savings and Loan to be improperly presented. Specifically, in light of the Debtor's inaction, the confirmation event implicitly has determined the issue of claim allowance as a matter of res judicata. Additionally, treating the Debtor's Motion as a request to reconsider allowance of World's claim pursuant to 11 U.S.C. § 502(j), the Court finds that no cause exists to grant such review. It, therefore, is **ORDERED** that the Debtor's "Objection to Proof of Claim" hereby is **DENIED**.

**IT IS SO ORDERED.**

---

7. The Court need not speculate upon the specific time at which settlement ceased to be a valid option justifying the Debtor's continued failure to file an objection or motion to reconsider. Suffice it to say that, on these facts, the Debtor has offered the Court no reason to believe that such protracted negotiations could be characterized as productive and justifying continued delay on his part. Thus, while the Court normally would provide those seeking settlement a great degree of latitude in delaying further action, here the Debtor crossed far beyond the parameters of good faith diligence in pursuing that option.