### In re Anthony D. WILLOUGHBY d/b/a Kung Fu Theatres, Debtor.

### No. 03–09312–JKC–13.

United States Bankruptcy Court,
S.D. Indiana,
Indianapolis Division.

April 19, 2005.

Dennis M. Ostrowski, Louisville, Kentucky, for Creditor–Objector.

Ronald J. Moore, Indianapolis, Indiana, for Debtor.

### ORDER AND OPINION GRANTING DEBTOR'S MOTION TO AMEND CONFIRMED PLAN AND MOTION TO RECONSIDER CLAIM

JAMES K. COACHYS, Bankruptcy Judge.

This matter comes before the Court on Debtor Anthony D. Willoughby d/b/a Kung

Fu Theatres' ("Debtor") Motion to Amend Confirmed Plan (the "Motion to Amend") and Motion to Reconsider Claim # 2 ("Motion to Reconsider"), wherein Debtor seeks to reduce, pursuant to the United States Supreme Court's recent decision in *In re Till,* the interest rate paid under his confirmed plan to DaimlerChrysler Services North America LLC ("Daimler") on its allowed secured claim. For the reasons stated below, the Court grants both Motions.[1]

### Facts and Procedural History

Debtor commenced a case under Chapter 13 of the Code on May 21, 2003. According to his [Fifth] Amended Plan (the "Plan"), Debtor agreed to pay Daimler a secured claim in the amount of $8,329.00, to be paid over time at 19.99% interest, for a 2000 Chrysler Concorde. Daimler initially objected to that valuation, but withdrew such objection prior to the Court's hearing on the matter. Upon receiving the Chapter 13 trustee's favorable report, the Court confirmed the Plan on February 9, 2004.

On May 17, 2004, the United States Supreme Court issued *Till v. SCS Credit Corp. (In re Till),* 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004), which set forth a definitive standard, as explained more fully below, for determining the proper rate of interest to be paid on secured claims "crammed down" under 11 U.S.C. § 1325(a)(5)(B)(ii). On June 17, 2004, the Debtor filed a Motion to Amend and an Amended Chapter 13 Plan,[2] both of which proposed to reduce the interest rate to be paid on Daimler's allowed secured claim from 19.99% to 5.5%. Daimler objected to this treatment.

At a hearing on September 28, 2004, the Court ordered the parties to file briefs in support of their respective positions. Following an additional hearing, the Court entered an Order on December 2, 2004, which stated in relevant part:

Section 1329(a)(1) of the Code states that "[a]t any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to increase or *reduce* the amount of payments on claims of a particular class provided for by the plan . . . ." (italics added). Significantly, this provision allows a reduction in the amount of payments on a claim; not a reduction in the claim itself. It appears then, that in order to modify his plan, the Debtor must first obtain a reduction in Daimler's allowed secured claim which, as established by the Debtor's confirmed plan, is $8,329.00 plus 19.99% interest.

Pursuant to Code § 502(j), "a claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of a case." Bankruptcy Rule 3008 further provides that "[a] party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate. The court after a hearing on notice shall enter an appropriate order."

Although reconsideration of Daimler's Claim is a procedural prerequisite to modification of the plan, the parties' arguments are presented solely within the context of § 1329(a). More specifically,

---

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1)(A) and (B).

2. Debtor has erroneously titled this plan as his "Third Amended Plan." By the Court's count, this is his Sixth Amended Plan.

neither party has addressed "cause" for purposes of § 502. Furthermore, while Daimler has argued that the Debtor is bound by his plan by virtue of Code § 1327(a), neither party has specifically addressed whether a claim may be reconsidered pursuant to Code § 502(j), notwithstanding the binding effect of a confirmed plan.

**Accordingly, both parties are hereby given 30 days from the date of this Order to file briefs on (1) whether there is any time limit to file a motion under Rule 502(j); (2) what constitutes "cause" under Rule 502(j); (3) whether cause exists under the standard(s) applicable under Rule 502(j); (4) the relationship between § 1327(a) and 502(j) of the Code; and (5) any other issues the parties determine to be relevant in light of the above discussion.**

(emphasis in the original) (internal footnotes omitted). In compliance with this Order, Debtor filed a Supplemental Brief in Support of Motion to [Amend] and a Motion to Reconsider, while Daimler filed a Supplemental Brief on its Objection to the Motion to Amend and an Objection to the Motion to Reconsider.

### Discussion and Decision

### The Effect of Till

The Court begins its analysis with an examination of *Till* and its effect on determining the interest included in Daimler's "allowed secured claim" pursuant to § 1325(a)(5)(B)(ii). That section states that a plan shall be confirmed if:

(5) with respect to each allowed secured claim provided for by the plan-...

(B) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, or property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim ....

Payment of a secured claim under § 1325(a)(5)(B)(ii) is often referred to as a "cram down" because it can be enforced over a claim holder's objection. *Till*, 124 S.Ct. at 1955. "Plans that invoke the cram down power often provide for installment payments over a period of years rather than a single payment. In such circumstances, the amount of each installment must be calibrated to ensure that, over time, the creditor receives disbursements whose total present value equals or exceeds the allowed claim." *Id.* at 1955–56.

In *Till*, the Court was asked to decide which of four different approaches-all of which were identified by the lower courts-was appropriate for making that calibration. Ultimately, the Court rejected the "costs of funds," "contract rate" and "coerced loan" approaches, concluding that each of them "is complicated, imposes significant evidentiary costs, and aims to make each individual creditor whole rather than ensure the debtor's payments have the required present value." *Id.* at 1960–62. Instead, the Court adopted the "formula" or "prime plus" approach. That approach:

[B]egins by looking to the national prime rate, reported daily in the press, which reflects the financial market's estimate of the amount a commercial bank should charge a creditworthy commercial borrower to compensate for the opportunity costs of the loan, the risk of inflation, and the relatively slight risk of default. Because bankrupt debtors typically pose a greater risk of nonpayment than solvent commercial borrowers, the approach then requires a bankruptcy court to adjust the prime rate according-

ly. The appropriate size of that risk adjustment depends ... on such factors as the circumstances of the estate, the nature of the security, and the duration and feasability of the reorganization plan.

*Id.* at 1961.

As of confirmation of the Plan, the parties were bound by the Seventh Circuit's opinion in *Till,* according to which the contract rate "served as the presumptive rate, which either the debtor or creditor could challenge with evidence that a higher or lower rate should apply." *Till,* 301 F.3d 583, 592 (7th Cir.2002). *Id.* at 592. Consistent with that, the 19.99% interest rate provided for by the Plan on Daimler's allowed secured claim is the same rate provided for by Daimler's contract with Debtor. The Court presumes that if calculated under *Till's* formula approach, the interest component of Daimler's allowed secured claim would be much lower than 19.99%.

### Section 502(j) and 1327(a): the Binding Effect of a Plan

As set forth in its previous Order, under § 502(j), "[a] claim that has been allowed or disallowed may be reconsidered for cause.... according to the equities of the case." Rule 3008 states that "a party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate." Notwithstanding these sections, Daimler argues that Debtor is estopped from challenging Daimler's secured claim by virtue of the confirmation order.

The Bankruptcy Code provides that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C.

§ 1327(a). "Fulfilling a need to somehow dispose of reorganizations with finality, this provision closely tracks the operation of the res judicata doctrine. Thus, it is frequently said that the order of confirmation binds both creditor and any debtor on any matter which was or could have been raised as part of the confirmation process." *In re Bernard,* 189 B.R. 1017, 1019 (Bankr. N.D.Ga.1996) (citations omitted).

 The Court agrees with the general principle that a confirmation order is res judicata as to all the issues decided or which could have been decided at confirmation. *See Adair v. Sherman,* 230 F.3d 890, 895 (7th Cir.2000) (citations omitted) (confirmation order precludes collateral attack of issue that was or could have been determined at confirmation). Yet Code §§ 502(j) and 1329–the latter of which specifically permits post-confirmation plan modification-suggest that there are certain exceptions to this general principle. According to the Seventh Circuit:

[T]he statutory framework of the Bankruptcy Code plainly assumes the possibility of modifications of bankruptcy plans after they are confirmed. Section 1327 of the bankruptcy code provides that "the provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan...." Congress, however, also provided a mechanism to change the binding effect of § 1327 when it passed § 1329 to allow for modifications. "If the drafters of the Bankruptcy Code intended for a confirmation hearing to have res judicata effect, there would be little or no reason for Section 1329."

*In re Witkowski,* 16 F.3d 739, 745 (7th Cir.1994). Furthermore, as explained in *Bernard,* the restrictive interpretation es-

poused by Daimler would render § 502(j) meaningless in the typical case:

> [A] conclusion that res judicata bars reconsideration of allowance after confirmation would require one substantially to read section 502(j) out of the books. . . . [S]uch an interpretation overlooks the mechanics behind the two sections. By definition, one only may grant reconsideration after some decision has been reached. Here, that implicit decision of allowance took place at confirmation and, thus, a "reconsideration" could only occur at some time post-confirmation. It certainly, therefore, may not be said that reconsideration "could have been heard as part of confirmation" so as to fall within the res judicata bar of section 1327(a). Indeed, as is normally the case with court decisions, a motion to reconsider offers the means by which to change the very decision which otherwise would become res judicata.

*Bernard,* 189 B.R. at 1021, n. 4.

■ Where possible, courts must give effect to all relevant sections of the Code, reading them in a collective fashion. *See Buttitta v. City of Chicago,* 9 F.3d 1198, 1204 (7th Cir.1993). For this reason, the Court rejects Daimler's argument that confirmation precludes reconsideration of a claim under § 502(j). Rather, the interests of finality and judicial economy may be considered in determining whether cause exists to reconsider the subject claim and whether reconsideration is equitable.

### *Deadline to File a § 502(j) Motion*

■ Federal Rule Bankruptcy Procedure 9024 states that a motion for the reconsideration of an order allowing or disallowing a claim against the estate "without a contest" is not subject to the time limitations prescribed in Fed.R.Civ.P. 60(b). From this, the Court concludes that there is no deadline to file a § 502(j) motion *unless* the claim was allowed or disallowed by way of an adversary proceeding or other contested litigation.[3] Here, Daimler's objection to the Plan was resolved by consent before the Court heard from the parties on the matter. This does not constitute a "contest" for purposes of Rule 9024 and, thus, the Debtor was free to seek reconsideration of Daimler's claim at any time.

### *Standard for Reconsideration*

Section 502(j) states that a claim may be reconsidered "for cause." "Cause" is not explicitly defined in the Code or in the Rules, and there is some disagreement among the courts as to its meaning. *See In re Watkins,* 240 B.R. 735, 739 (Bankr. C.D.Ill.1999). Numerous courts have likened the "cause" standard found in section 502(j) with the substantive requirements of Bankruptcy Rule 9024 and Rule 60(b) of the Federal Rules of Civil Procedure. *See, e.g., In re Colley,* 814 F.2d 1008, 1010–1011 (5th Cir.1987); *cert. denied,* 484 U.S. 898, 108 S.Ct. 234, 98 L.Ed.2d 193 (1987); *In re W.F. Hurley, Inc.,* 612 F.2d 392, 396 n. 4 (8th Cir.1980); *Amtech Lighting Servs. Co. v. Payless Cashways (In re Payless Cashways),* 230 B.R. 120, 137 (8th Cir. BAP 1999); *Watkins,* 240 B.R. at 739; *In re Southwest Florida Telecomm.,* 234 B.R. 137, 142 (Bankr.M.D.Fla.1998). Rule 60(b) sets forth six grounds for granting relief from a judgment or order: (1) mistake,

---

**3.** While it appears to the Court that under Rule 9024, motions brought under § 502(j) following an adversary proceeding or contested matter are subject to the time limitations of Fed.R.Civ.P. 60(b)(1)-(3) (Rule 60(b)(4)-(6) motions must be brought within a "reason-able time"), there is some debate as to whether Rule 502(j) applies at all to claims resolved by contested litigation. *See* 4 Collier on Bankruptcy ¶ 502.11[3] (15th ed. rev.2004) for a discussion of this issue.

inadvertence, surprise, or excusable neglect; (2) newly discovered evidence by which due diligence could not have been discovered in time to move for a new trial under rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Application of Rule 60(b) to Section 502(j) has been conditioned by various courts, however, on certain factors. Several courts have applied Rule 60(b) only in cases where the claim was allowed or disallowed after contested litigation. *See, e.g., Colley v. National Bank of Texas (Matter of Colley),* 814 F.2d 1008, 1010 (5th Cir. 1987); *In re Gomez,* 250 B.R. 397, 400–401 (Bankr.M.D.Fla.1999). As explained in *Gomez:*

> In cases where a proof of claim was not actually litigated but instead was deemed allowed by the confirmation order without objection, courts have instead articulated a different standard to establish cause for reconsideration under § 502(j). These courts have weighed several factors to determine if sufficient cause was shown [including] (1) the extent and reasonableness of the delay, (2) the prejudice to any party in interest, (3) the effect on efficient court administration, and (4) the moving party's good faith.

*Gomez,* 250 B.R. at 401.

Still other courts apply the Rule 60(b) standard only if the § 502(j) motion to reconsider was filed more than 10 days after the judgment allowing or disallowing the claim was entered. Motions filed less than 10 days after the entry of judgment are treated by these courts under Fed. R.Bankr.P. 9023 (incorporating Fed. R.Civ.P. 59). *See, e.g., Ashford v. Consolidated Pioneer Mortgage (In re Consolidated Pioneer Mortgage),* 178 B.R. 222, 227 (9th Cir. BAP 1995); *Abraham v. Aguilar (In re Aguilar),* 861 F.2d 873, 874 (5th Cir.1988). Rule 59 provides that "[a] new trial may be granted ... for any of the reasons for which rehearings have heretofore been granted in suits of equity in the courts of the United States."

■ After reviewing the significant body of case law devoted to the appropriate standard for cause under § 502(j), the Court must conclude that the issue has become needlessly complicated. Bankruptcy courts have substantial discretion in deciding what constitutes "cause" for reconsidering a claim pursuant to section 502(j). *See, e.g., Colley,* 814 F.2d at 1010 ("As the Advisory Committee Note to Bankruptcy Rule 3008 evidences, the bankruptcy court's discretion in deciding whether to reconsider a claim is virtually plenary, as the court may decline to reconsider without a hearing or notice to the parties involved. If reconsideration is granted, the court may readjust the claim in any fashion 'according to the equities of the case.'"). Because of this discretion, the Court is not inclined to adopt a hard and fast rule as to what constitutes "cause" or to make whatever rule it does apply dependent on how or when judgment was entered on the claim. Presumably, if Congress wanted a specific standard to apply, it would have articulated one. Furthermore, § 502(j) and Rule 3008 are unnecessary if Rule 9023 and 9024 were intended to apply mechanically to motions to reconsider claims.

■ In the Court's opinion, it should instead consider the totality of the circum-

stances to determine whether cause exists under § 502(j) and whether equity requires the claim to be allowed, disallowed, or otherwise adjusted. Rules 59 and 60 certainly provide significant guidance as to what may constitute cause under § 502(j), but they should not, in the Court's opinion, be applied as rigidly as some cases would suggest. In examining the totality of the circumstances, the Court may also consider any relevant factor to determine whether equity warrants reconsideration of the claim, including the reason for, and effect of, any delay in seeking reconsideration of the claim; the detrimental or beneficial effect of reconsideration on other parties; whether any party has altered its position in reliance on the Court's previous judgment or confirmation order, the effect of reconsideration on administration of the case or like cases; and the movant's good faith.

■ Notwithstanding the above discussion, it appears that cause does exist in this case under Rule 60(b). In his Supplemental Brief, Debtor argues that the Claim should be reconsidered pursuant to Rule 60(b)(6) for "other reason[s] justifying relief from judgment," that reason being the change in law effected by the Supreme Court's decision in *Till*. Generally, a change in decisional law is insufficient to constitute an extraordinary circumstance warranting relief under Rule 60(b)(6). *See Agostini v. Felton*, 521 U.S. 203, 239, 117 S.Ct. 1997, 2018, 138 L.Ed.2d 391 (1997) ("Intervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6)."). There must be a change in decisional law, "coupled with some other special circumstance." *Blue Diamond Coal Co. v. Trs. of the UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir.2001). Debtor has not identified any special circumstances and,

thus, the Court cannot conclude that Debtor is entitled to relief under Rule 60(b)(6).

■ The Debtor also argues that "relief from judgment may be granted prospectively if the underlying law has changed since the judgment was entered." While not explicitly cited by the Debtor, this argument falls within the purview of Rule 60(b)(5). That rule allows relief from a judgment on the grounds that the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, *"or it is no longer equitable that the judgment should have prospective application."* (Italics added).

> The ... final ground [of Rule 60(b)(5)].... is based on the historic power of a court of equity to modify its decree in the light of changed circumstances.... Although the principal significance of this portion of the rule is with regard to injunctions, it is not confined to that form of relief, nor even to relief that historically would have been granted in courts of equity. Any such restriction would be inconsistent with the merger of law and equity. *Instead it applies to any judgment that has prospective effect as contrasted with those that offer a present remedy for a past wrong.*

11 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2863, p. 336–37 (1995) (italics added).

Clearly, "cause" does not exist under Rule 60(b)(5) to revise the value of $8,329.00 that was assigned to Daimler's collateral under the Plan. Because that amount was determined "as of the effective date of the plan," it is not "prospective" in nature. *See* 11 U.S.C. § 1325(a)(5)(B)(ii). The interest added to that amount, however, is based on a different standard altogether. As explained in *Till*, interest is based on the premise that "[a] debtor's

promise of future payments is worth less than an immediate payment of the same total amount because the creditor cannot use the money right away, inflation may cause the value of the dollar to decline before the debtor pays, and there is always some risk of nonpayment." *Till,* 124 S.Ct. at 1958. In other words, interest under § 1325(a)(5)(B)(ii) is designed to protect a creditor from future injury and, to the extent it is being paid pursuant to an uncompleted plan, it is prospective in nature. Because *Till* represents a significant change in the law that has prospective application, the Court must conclude that "cause" exists to reconsider Daimler's allowed secured claim under Rule 60(b)(5).

In determining whether it is equitable to reduce the interest rate paid to Daimler under the Plan, the Court notes that Debtor's delay was not unreasonable. Debtor filed his Motion to Amend almost immediately following the Supreme Court's decision in *Till.* Also, there is nothing to suggest that Daimler had, as of the filing of the Motion to Amend, adversely altered its position based on the confirmation order, nor is there any suggestion that Debtor is acting in bad faith. Finally, modification of the Plan should prove beneficial to Debtor's unsecured creditors in that they will receive a greater *pro rata* distribution.

The Court's one and only reservation pertains to the administration of similar cases. There is some concern that by granting the Debtor's Motions, the Court will invite countless § 502(j) motions, thereby placing a considerable burden on the Court, the Clerk and the Chapter 13 trustees.[4] The Court has no doubt that similar motions will be filed but anticipates that in light of this opinion, most will be resolved without contest, for the only remaining issue will be the appropriate rate of interest under *Till's* "formula" approach.[5]

The Court emphasizes that this holding applies only to *future*[6] payments made on secured claims according to *uncompleted* plans. Neither Rule 60(b)(5) nor Section 502(j) provide a basis to revisit the interest rates applied to claims that have already been paid in full or to payments that have already been made. In other words, creditors and the trustee are not expected to account for or disgorge payments that have already been made or received.

### Conclusion

■ Based on the foregoing, the Court concludes that cause exists under § 502(j) to reconsider Daimler's allowed secured claim and that it is equitable to adjust the interest rate paid on the claim under Debtor's Plan. While Daimler has objected to a reduction in the interest rate paid on it claim, it has not argued in the alternative that the Debtor's proposal to pay 5.5% interest in inconsistent with *Till's* "formula" approach. The Court must, therefore,

---

4. In response to the Debtor's Motion to Amend, Chapter 13 Trustee Robert A. Brothers requested a hearing "to determine whether the interest rate to the car lender must be reduced retroactively (presenting numerous accounting problems to a Chapter 13 Trusteeship) or whether it may be applied prospectively ...." From this, the Court infers that Mr. Brothers is not troubled, or as troubled, by a reduction in the interest rate to be paid Daimler as long as such reduction only applies to future payments.

5. The Supreme Court stated in *Till* that the courts must conduct an evidentiary hearing to determine the appropriate rate of interest. *Till,* 124 S.Ct. at 1961. From the Court's experience, however, such hearings are not typically necessary. Since *Till* was issued, lenders in this jurisdiction have generally consented to the interest rates proposed by debtors pursuant to § 1325(a)(5)(B)(ii).

6. By "future," the Court means payments made *after* a § 502(j) motion to reconsider has been granted.

conclude that Daimler has waived that argument or finds the rate to be acceptable according to *Till*. The Court grants Debtor's Motion to Amend and Motion to Reconsider and adjusts Daimler's claim to provide, as of the date of this Order, for interest at the rate of 5.5% per annum. Debtor's "Third Amended Chapter 13 Plan," dated June 17, 2004, shall now be the operative plan in this case. The Chapter 13 Trustee is instructed to make any *future* distributions to Daimler in a manner consistent with this plan and Order.